STATE of Missouri, Respondent,

v.

Mitchell DUNN, Appellant.

No. WD 56028.

Missouri Court of Appeals,
Western District.

Oct. 5, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 23, 1999.

Application for Transfer Denied
Jan. 25, 2000.

428

Andrew Allen Schroeder, Public Defender, Kansas City, for Appellant.

Philip Koppe, Atty. Gen., Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

Mitchell Dunn appeals the circuit court's judgment convicting him of two counts of forcible rape, two counts of forcible sodomy, one count of first-degree burglary, one count of sexual abuse, and four counts of third-degree assault of an 85–year–old woman in her Kansas City house on August 9 and 10, 1997. Dunn complains that the state did not present sufficient evidence to sustain separate convictions of each count. He specifically complains that the state did not sustain its burden of proving sexual abuse and the second count

of forcible rape. He also complains that the circuit court erred in accepting the jury's verdicts convicting him of four counts of third-degree assault, in admitting telephone records into evidence, and in overruling his objections to the prosecutor's *voir dire* questions. We affirm the circuit court's judgment.

He first asserts that the prosecutor did not prove the requisite elements for sexual abuse that he had touched the victim's genitals or that he did so for the purpose of arousing or gratifying his sexual desire during a time other than when he was raping and sodomizing the victim. Dunn argues that he should not be convicted of sexual abuse because that count merged with the rape and sodomy counts.

■ The General Assembly has declared that "[a] person commits the crime of sexual abuse if he subjects another person to sexual contact by the use of forcible compulsion." Section 566.100.1, RSMo 1994. The General Assembly defined "sexual contact" in § 566.010(3), RSMo 1994, as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person[.]" The prosecutor submitted sufficient evidence from which the jury could have found, beyond a reasonable doubt, that Dunn had violated § 566.100.1.

■ The victim testified that her attacker, after raping her once, attempted to rape her again. The prosecutor asked her to clarify:

Q. When you say [that] he tried to rape you, did he stick his penis in your vagina again?

A. I think so.

Q. Could you tell how far his penis penetrated your vagina?

A. I couldn't tell.

Q. How long did that second assault occur? How long did that take to happen?

A. A long time.

This was sufficient to support the jury's finding Dunn guilty of sexual abuse. Dunn argues, however, that § 556.041(3), RSMo 1994, prohibited the state's prosecuting him for forcible rape and sexual abuse. Section 556.041 provides:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

. . . .

(3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct[.]

Dunn argues that forcible rape is a specific instance of sexual contact, so § 556.041(3) prohibited the state's prosecuting him for forcible rape and sexual abuse.

His argument is without merit. For § 556.041(3) to apply to his case, either forcible rape or sexual abuse would have to be a specific instance of the other. Neither is a specific instance of the other. This is because sexual abuse has a particular mental element unique to it: having "the purpose of arousing or gratifying sexual desire of any person[.]" The Supreme Court has explained the difference between rape and sexual abuse:

[A]s well as proscribing conduct not punishable as rape, sexual abuse ... requires a mental state ... not necessary to conviction of rape. In rape, purpose and motive are irrelevant. As stated in *State v. Tompkins,* 277 S.W.2d 587 (Mo.1955), "If the evidence showed that there was carnal knowledge, force and the commission of the act, no intent is requisite other than that evidenced by the doing of the acts constituting the offense." *Id.* at 591. Accordingly, sexual abuse ... is not a lesser included offense of the crime charged.

*State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). Sexual abuse, therefore, was not a specific instance of forcible rape, as Dunn argues.

In his next point, Dunn argues that the circuit court erred in overruling his motion for judgment of acquittal to a second count of forcible rape because, he asserts, the state did not prove his guilt beyond a reasonable doubt. He contends that the state did not establish that his sexual organ "penetrated" the victim's sexual organ. He bases this on the victim's testifying that Dunn "tried" to rape her a second time.

We view the evidence in a light most favorable to the jury's verdict. This means that we consider only inferences from the evidence that supports the jury's finding of guilt. *State v. Johnston,* 957 S.W.2d 734, 747 (Mo. banc 1997), *cert. denied,*

"[A]ny penetration, however slight, of the female sex organs by the male sex organ" satisfies the General Assembly's definition of sexual intercourse. Section 566.010(4), RSMo 1994. The female sexual organs include a woman's vulva and external genitals. *State v. Coffman,* 360 Mo. 782, 230 S.W.2d 761, 763 (1950).

The victim testified that Dunn raped her in her upstairs bedroom and then let her go downstairs to use the bathroom. Afterwards, she testified, he forced her to return to the bedroom when he "tried to rape [her] again for quite a while." The prosecutor asked her to clarify her testimony:

Q. When you say [that] he tried to rape you, did he stick his penis in your vagina again?

A. I think so.

Q. Could you tell how far his penis penetrated your vagina?

A. I couldn't tell.

Inferring from this evidence only those inferences that favored the jury's verdict, this evidence established that Dunn's penis penetrated the victim's vagina. This was sufficient to support the jury's verdict. Also supporting the verdict was evidence that the victim had suffered serious injuries to her vaginal area. This was consistent with the state's contention of two rapes.

In his third point, Dunn raises a double jeopardy claim. He complains that the circuit court erred in accepting the jury's verdicts convicting him of four counts of third-degree assault. He contends that he committed "only two acts of assault in the third degree when he simultaneously choked and struck [the victim] on her face on two separate occasions." Dunn did not preserve the point for our review, but he asks us to review it anyway as "plain error."

We review unpreserved error only if it is plain error. The Supreme Court has defined plain error as an error that facially establishes substantial grounds for our believing that it has resulted in a manifest injustice or a miscarriage of justice. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). Dunn does not present us with "plain error." This is because a claim of double jeopardy is a personal privilege that is waived if not raised at the proper time. *State v. Rosendahl,* 938 S.W.2d 274, 277 (Mo.App.1997); *State v. Gaver,* 944 S.W.2d 273, 279 (Mo.App.1997); *State v. Baker,* 850 S.W.2d 944, 947 (Mo.App.1993). The exception noted in *State v. Elliott,* 987 S.W.2d 418, 421 (Mo.App.1999) (plain error is proper to determine double jeopardy challenges "in any case in which we can determine from the face of the record that the court had no power to enter the conviction"), is not present in this case. We decline plain error review.

In his fourth point, Dunn complains that the circuit court erred in admitting evidence, over his objection, that the victim telephoned her son on the day of the attack and talked to him after 7:00 P.M. for about 10 to 15 minutes. He also contends

that the circuit court erred in admitting into evidence computer-generated telephone billing records which established that a telephone call was made from the victim's number to her son's number and that the call lasted from 7:19 P.M. until 7:32 P.M.

Dunn asserts that all of this evidence was inadmissible because it was hearsay and not admissible pursuant to the business record exception to the hearsay rule, § 490.680, RSMo 1994. In particular, he contends that because AT & T furnished Southwestern Bell the information regarding long distance calls for the telephone bills, only an AT & T records custodian could establish that the telephone records were made and maintained in the regular course of AT & T's business. We reject his contention.

The computer-generated record was a billing record prepared by Southwestern Bell Telephone Company and billed on behalf of AT & T. Judy Figlio, a manager in Southwestern Bell's security office, explained how the computer-generated telephone bills were made. She testified that her responsibilities included keeping custody of Southwestern Bell's records. She testified that Southwestern Bell kept billing records for other long distance companies, including AT & T:

Q. How is that done? How do you receive information from AT & T from their records?

A. They send us—they're called AMA tapes, billing tapes that say a call took place on a certain date and time from the originating number and went to a terminating number. And they send daily tapes to us to process that we put that information on the particular customer['] bill for them.

. . . .

Q. . . . Prior to you[r] billing customers, what does AT & T have to do?

A. AT & T would have to send to Southwestern Bell billing records, infor-

mation of calls that took place that we'll put on our customer['s] bill.

Q. Okay. Beyond sending out those customers their bills, do you maintain those records in your facility or computers?

A. Yes, we do.

Q. Do you do that in the normal course of your business at Southwestern Bell?

A. Yes, we do.

. . . .

Q. [I]s that information and those records produced at or near the time that—the time period of these bills?

A. Yes. . . . Within 30 days.

THE COURT: I guess I am not very sophisticated about tape. What do you mean by tapes are sent?

THE WITNESS: It is a computer tape. . . . An electronic record. . . . That when you make a long distance phone call—

THE COURT: How is that tape generated, do you know?

THE WITNESS: Part of it is through our electronics switch where you get your dial tone. And then when you dial one we see who is your long distance carrier. We send that call to AT & T. They, in turn, see where that customer is trying to reach. They send the call over their network, and then it ends up with the terminating end.

THE COURT: I mean, is this done electronically?

THE WITNESS: Yes, it is all done electronically over the computer system.

The circuit court ruled that this provided sufficient reassurance of reliability to make the telephone billing records admissible. We concur.

■ A trace report, which tracks a telephone call made to a specific number and which is generated by a telephone company's computer, is not hearsay. 2 MCCOR-MICK ON EVIDENCE, § 294 (John W. Strong ed., 4 th ed.1992). As noted in McCormick:

Because records of this type are not the counterpart of a statement by a human declarant, which should ideally be tested by cross-examination of that declarant, they should not be treated as hearsay, but rather their admissibility should be determined on the basis of the reliability and accuracy of the process involved. *Id.*

The[2] Supreme Court of Tennessee dealt with this issue in *State v. Hall,* 976 S.W.2d 121 (1998), *cert. denied,*

[C]omputer generated records are not hearsay: The role that the hearsay rule plays in limiting the fact finder's consideration to reliable evidence received from witnesses who are under oath and subject to cross-examination has no application to the computer generated record in this case. Instead, the admissibility of the computer tracing system record should be measured by the reliability of the system, itself, relative to its proper functioning and accuracy.... In this case, the record reflects that persons with special knowledge about the operation of the computer system gave evidence about the accuracy and reliability of the computer tracing so as to justify the admission of the computer printouts. The rule against hearsay is not implicated.... Here, the state did not present the testimony of an AT & T records custodian, but there was testimony from ... [the records custodian for GTE telephone company in Texas]. He testified that AT & T's billing system is highly reliable and that all local phone companies doing business with AT & T have the exact same billing system.... [H]is testimony was sufficient to confirm the reliability of the telephone bill[.]

*Id.* at 147. *See also State v. Modest,* 88 Wash.App. 239, 944 P.2d 417 (1997); *State v. Savage,* 575 So.2d 478 (La.App.1991), and *State v. Armstead,* 432 So.2d 837 (La. 1983).

■ Figlio's testimony was sufficient to confirm the reliability of the telephone records. She explained that entries in the record were made instantaneously with the making of the calls and that AT & T would send Southwestern Bell the billing tapes which established when the call took place, the originating number and the terminating number. She explained that the source of the information was a computer which monitored Southwestern Bell's switching operations. The circuit court was correct in concluding that these records were uniquely reliable in that they were computer-generated rather than the result of human entries. Dunn's point is without merit.

■ In his final point, Dunn complains that the circuit court "manifestly abused its discretion in allowing the state, over [Dunn's] objection, to ask the jury panel during *voir dire* whether anyone here think[s] that DNA evidence alone could never be enough to prove the [s]tate's case[.]" Dunn complains that this question violated his due process rights and his right to a fair trial because it "allowed the [s]tate to obtain a commitment from all twelve of Mr. Dunn's jurors that a DNA match alone would be sufficient evidence to satisfy them beyond a reasonable doubt that Mr. Dunn was guilty[.]" The point is without merit.

The prosecutor's question tested the jurors' reservations about DNA evidence. The prosecutor did not ask whether the jurors *would* convict only the basis of DNA tests but whether any juror believed that DNA evidence alone "could never be enough." The question did not seek a commitment but tested jurors' prejudice to particular evidence. "A lawyer cannot use *voir dire* to induce the venire panel to pledge to certain actions or use it to speculate about any contingency which might arise during a trial ... [,] but he or she may probe for preconceived prejudices which would prevent the panelists from following the court's instructions." *State v. Spidle,* 967 S.W.2d 289, 291 (Mo.App. 1998). Testing the jurors' prejudice about

DNA evidence, not seeking a pledge or asking for speculation about a contingency, was the purpose for the prosecutor's question. The circuit court properly overruled Dunn's objection.

For these reasons, we affirm the circuit court's judgment.

PATRICIA BRECKENRIDGE, Presiding Judge, and VICTOR HOWARD, Judge, concur.