

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102380 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1422-CR03580 |
| | ) | |
| LATROY SANDERS, | ) | Honorable Joan L. Moriarty |
| | ) | |
| Defendant/Appellant. | ) | FILED: February 16, 2016 |

### OPINION

In a thirty-two count indictment, the State charged LaTroy Sanders (Defendant) with multiple crimes stemming from the sexual abuse of both his stepdaughter G.O. (Stepdaughter) and his daughter J.S. (Daughter). After a jury found Defendant guilty on twenty-two counts, the trial court entered judgment against him. Defendant appeals from the judgment upon his convictions. We reverse in part and remand for the trial court to vacate Defendant's convictions on Counts 25 and 26 and for the limited purpose of correcting the written judgment to reflect the oral sentence pronounced for Count 16. In all other respects, we affirm.

### Factual and Procedural Background

In September 2014, the State charged Defendant for crimes that occurred between 2004 and 2010. The State substituted an information for the indictment, and after the trial court dismissed four counts on statute of limitations grounds, a second substitute information in lieu of indictment was filed. Trial commenced on four counts of statutory rape in the first degree (in

violation of Section 566.032[1]: counts 1, 2, 11, and 12); one count of forcible rape (Section 566.030: count 13); six counts of statutory sodomy in the first degree (Section 566.062: counts 3, 4, 5, 6, 7, and 14;) six counts of statutory sodomy in the second degree (Section 566.064: counts 18, 19, 20, 21, 22, and 23); one count of child molestation in the first degree (Section 566.067: count 15); two counts of child molestation in the second degree (Section 566.068: counts 27 and 28); seven counts of incest (Section 568.020: counts 8, 9, 16, 17, 24, 25, and 26); and one count of sexual misconduct in the second degree (Section 566.093: count 10).

Between 2004 and 2008, Daughter lived with Defendant and his wife (Daughter's stepmother), Joy Sanders (Wife). Daughter had previously lived with her birth mother, and moved into Wife's / Defendant's house on San Francisco Avenue at approximately 13 years old. During the trial, while testifying about incidents of mouth-to-genital and mouth-to-breast contact, Daughter was asked:

> Q.    Is there anything else that happened that first time that you remember?
>
> A.    He went into his room and got a dildo.
>
> Q.    Then what happened after that?
>
> A.    He tried to use it, but it wouldn't go in.
>
> Q.    Tell me more about that.
>
> A.    Well, he tried to put it in my vagina, but it wouldn't go in because I had never had sex before.

Daughter added that Defendant continued to perform oral sex on her, to show her pornography, and to use the dildo on her after the family moved from San Francisco Avenue to a house on Plover Avenue. When asked why she did not report Defendant's behavior, Daughter responded:

---

[1] Unless otherwise indicated, all other statutory references are to RSMo (2000) as supplemented.

A. At the time I was still staying with my dad and at that point, everybody in our house was scared of my dad.

Q. Tell me about that.

A. Well, for a long time he used to beat the crap out of my stepmom.

Q. Did you see that happen?

A. Oh yeah. A lot.

Daughter further testified about an incident where Defendant, upon discovering Daughter's boyfriend at the house, told Daughter to take off her pants and underwear. She did so, and Defendant hit her with his belt "on her butt" until "he felt it was enough." According to Daughter, Defendant stopped mistreating her once she moved out at age 16.

Wife, the birth mother of Stepdaughter, testified about the relationship between Defendant and the children he lived with:

A. He was a good father. I never had a problem with him being a father. Like, he was like Mr. Cosby, but he had a — temper. He would have a temper if they did something wrong. That's the only —

Q. Did he ever physically hurt you in any way?

A. Yes.

Defense counsel objected on relevance grounds. The trial court overruled the objection, and Wife's testimony continued:

Q. Would that happen sometimes in front of the kids?

A. Yes.

Q. Could you tell if the children were comfortable around him?

A. Yes, I could. […] They never would—they never let their guard down. So they may be at home with him all day and I'd come in, and now everybody wants to ask for a juice or a snack or they're hungry. So they wouldn't talk to him. I always found that strange.

3

Defense counsel later inquired into Wife's reaction when Daughter first told her something bad had transpired between Defendant and Daughter.

Q. And even when you had that watershed moment as it were with [Daughter], you didn't call the police?

A. No, I didn't.

Q. You didn't contact any of her teachers?

A. No.

Q. Anything like that?

A. No.

Finally, Stepdaughter took the stand to testify against Defendant. Stepdaughter testified she was 9 when first kissed on the lips by Defendant, and further testified at length about instances of mouth-to-genital, genital-to-genital, finger-to-genital, and genital-to-anus contact over a two- to three-year period. Stepdaughter told the jury: "[Defendant] did say, when this all started, said if I ever said anything he'd hurt my mom … I believed him …." On cross-examination, she added:

A. I was afraid of him so I didn't call out to anyone.

Q. Is that the same reason you didn't tell anybody about what was going on?

A. Yes.

At the close of the State's case-in-chief, the trial court dismissed two counts. After Defendant's evidence, the trial court denied Defendant's motion for judgment of acquittal and submitted the case to the jury. The jury, though it acquitted Defendant of four counts, found Defendant guilty on twenty-two counts: three counts of first-degree statutory rape; three counts of first-degree statutory sodomy; six counts of second-degree statutory sodomy; six counts of

4

incest; and one count each of forcible rape, child molestation, misdemeanor sexual misconduct, and one count of misdemeanor child molestation.

The trial court subsequently denied Defendant's motion for acquittal or new trial, found Defendant to be a prior and persistent offender, and sentenced Defendant to life imprisonment for the twelve counts related to Stepdaughter, plus a consecutive fifteen-year term for Count 18 (second-degree statutory sodomy against Daughter), plus another consecutive fifteen-year term for the nine counts related to Daughter. The trial court entered judgment against Defendant. This timely appeal followed.

Before turning to the contested portions of the appeal, we address several points conceded by the State. Defendant argues that the State did not carry its burden of evidence on Counts 25 and 26, both counts of felony incest that depend on the State proving that "deviate sexual intercourse" occurred. The statutory definition of deviate sexual intercourse broadened in 2006, and according to Defendant the evidence did not support a finding that his pre-2006 acts would have fit the contemporaneous definition. As a result, Defendant asserts the trial court plainly erred by giving jury instructions based on the newer definition. Because the State concedes these issues, and we find Defendant's points valid, we need not address them on the merits. We reverse Defendant's convictions on Counts 25 and 26 and remand for the trial court to vacate the sentences imposed on those counts.

In addition, regarding Count 16, we remand for the limited purpose of correcting the written judgment of a life sentence to conform to the trial court's oral pronouncement of seven years at the time of sentencing. Defendant raised this error, and the State concedes that correction via a *nunc pro tunc* order in the trial court is proper. See Johnson v. State, 446 S.W.3d

5

274, 276–77 (Mo. App. E.D. 2014) (where oral pronouncement of sentence is unambiguous, this court remands for entry of a corrected written judgment via a *nunc pro tunc* order).

Defendant's remaining arguments are twofold. First, he challenges the sufficiency of the evidence as to Counts 20 and 21, both counts of statutory sodomy that hinge on whether Defendant penetrated Daughter's vagina with a dildo. Secondly, he assigns error to the trial court's decision to admit, over objection, testimony that Defendant physically abused both Daughter and Wife.

Denial of Motions for Judgment of Acquittal Based on Sufficiency of the Evidence

When reviewing the sufficiency of the evidence to support a conviction, we do not weigh the evidence. State v. Jeffrey, 400 S.W.3d 303, 313 (Mo. banc 2013). Instead, we accept as true all evidence tending to prove guilt, together with all reasonable inferences that support the verdict. Id. We ignore all contrary evidence and inferences, and ultimately must assess whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. Id.

Section 566.064 defines statutory sodomy in the second degree as when a person, "being twenty-one years of age or older, […] has deviate sexual intercourse with another person who is less than seventeen years of age." As noted above, the current version of section 566.010(1) was enacted in 2006, and defines "deviate sexual intercourse" as

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

6

The female sex organs include a woman's vulva and external genitals. State v. Dunn, 7 S.W.3d 427, 430 (Mo. App. W.D. 1999). Arguing that the evidence showed he put a dildo on Daughter's vagina rather than in it, Defendant maintains the evidence did not show penetration.

The caselaw illuminates the distinction between evidence that does and does not show penetration. In Dunn, a rape victim testified that her assailant "tried to rape her … for quite awhile," but that she "couldn't tell" how far his penis penetrated her vagina. Id. Her testimony sufficed to show the defendant's "penetration" of her sex organs. But in State v. Herndon, the state's concession that the defendant placed his penis "only *on* the victim's vagina" meant there was insufficient evidence to sustain a statutory sodomy conviction. Herndon, 224 S.W.3d 97, 99–100 (Mo. App. W.D. 2007) (emphasis here).

Here, as a preliminary matter, Defendant relies too heavily on the State's closing argument, in which the prosecutor told the jury: "I don't have to prove it went all the way in or anything like that … Just the fact he touched that [dildo] to [Daughter's] genitals, that means he committed another count." The second sentence misstates the law: touching does not suffice; there must be "penetration, however slight." See Herndon, 224 S.W.3d at 99–100. But that misstatement was corrected by the trial court's instruction on the matter. See State v. McFadden, 391 S.W.3d 408, 421 (Mo. banc 2013) (where there was no indication jurors did not follow correct instructions, no error despite prosecutorial misstatement).

In any event, closing arguments are not evidence. See State v. Johnson, 316 S.W.3d 491, 498 (Mo. App. W.D. 2010) ("The relevant question is not what arguments the prosecutor made; rather, the relevant question is what evidence could the jury have credited and what reasonable inferences could the jury have drawn"). And there was ample evidence the dildo penetrated Daughter's vagina. Daughter testified that Defendant, who used the dildo on her at both the San

7

Francisco and Plover houses, "tried to put [the dildo] in my vagina, but it wouldn't go in because I had never had sex before." Such testimony weighs heavier than the evidence in Herndon, where the only evidence was of a penis *on* the victim's genitalia. As in Dunn, it is reasonable to infer that *trying* to penetrate a victim's vagina is an act that causes some penetration. The evidence, when inferences are made in favor of the jury's verdict, establishes that Defendant breeched Daughter's vulva and external genitals before being thwarted by the small diameter of her vaginal canal, and thus "penetrated" her in the statutory sense.

Accepting as true all evidence supporting the guilty verdicts on Count 20 and Count 21, we hold that a rational fact-finder could have found the essential elements of statutory sodomy in the second degree. Point denied.

Admission of Evidence Regarding Physical Abuse

We review Defendant's challenge to the admissibility of evidence for a clear abuse of discretion. State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006). The trial court abuses its considerable discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable that it indicates a lack of careful consideration. State v. Johnson, 456 S.W.3d 497, 502 (Mo. App. E.D. 2015). We will reverse only if the defendant shows both error and prejudice, where prejudice means a reasonable probability that the error affected the trial's outcome. Id.

Over objection, the trial court admitted testimony from J.S. that Defendant struck her with a belt. Counsel had objected on due process grounds that evidence of the belt incident would amount to being tried for an uncharged offense, and on relevance. Similarly, the trial court overruled Defendant's relevance objection to Wife's testimony that Defendant had physically hurt her. Defendant assigns error to both rulings.

The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that prior uncharged misconduct is inadmissible for the purpose of showing a defendant's propensity to commit such acts. State v. Miller, 372 S.W.3d 455, 473 (Mo. banc 2012). There are several exceptions. Such evidence may be admissible if it tends to establish motive, intent, the absence of mistake or accident, a common scheme, or the identity of the person charged with committing the crime. Id. Further, evidence of uncharged crimes that are part of the circumstances of the sequence of events surrounding the charged offense may be admissible to present a complete and coherent picture of the events that transpired. Id. at 474. This balancing of prejudicial effect and probative value lies within the trial court's sound discretion. Id.

The discretionary balancing between probative value and prejudicial effect also informs the question of relevance. Under Missouri law, relevance has two tiers: logical relevance and legal relevance. State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). Logical relevance has a very low threshold; evidence is logically relevant if it tends to make the existence of a material fact more or less probable. Id. at 276–77. Legal relevance, though, is a determination of the balance between the probative and prejudicial effect of the evidence. State v. Girardier, --- S.W.3d ----, 2015 WL 8230969, at *7 (Mo. App. E.D. 2015).

Evidence of bad acts may be admissible to explain a witness's delay in reporting a matter to the police. Miller, 372 S.W.3d at 474. In Miller, a sex abuse victim testified that the defendant had, on occasion, physically abused the victim, her mother, and her brothers. Id. Similarly, in Sprofera, a victim testified that the defendant shoved her mother into wall and broke a mirror. State v. Sprofera, 372 S.W.3d 17, 20 (Mo. App. W.D. 2012). In both cases, admitting the testimony was within the trial courts' discretion because the testimony was probative in

9

explaining the victim's fear and the delay in reporting the abuse. <u>Miller</u>, 372 S.W.3d at 474; <u>Sprofera</u>, 372 S.W.3d at 20.

Here, the trial court admitted Daughter's testimony for that very reason: her fear of Defendant based on an uncharged beating helped explain her delay reporting the charged offense. As to Wife's testimony, she acknowledged that Defendant hurt her, then immediately testified that none of the children who lived with Defendant ever "let their guard down" around him. Such statements bolster Daughter's testimony that she hesitated to come forward because Defendant "beat the crap out of [her] stepmom . . . a lot," and supports Stepdaughter's testimony that she was afraid of Defendant. Wife's testimony bears on the credibility of the victims' testimony and tends to give a complete and coherent picture of the events that transpired. <u>See</u> <u>State v. Primm</u>, 347 S.W.3d 66, 71 (Mo. banc 2011) (uncharged misconduct relevant because it accounted for delay in reporting sexual misconduct to the authorities thereby providing factfinder with complete and coherent picture of events).

Admitting the challenged testimony was not an abuse of discretion. Accordingly, there is no showing the trial court's rulings were clearly against the logic of the circumstances and were so unreasonable as to indicate a lack of careful consideration. Point denied.

Conclusion

We reverse Defendant's convictions on Counts 25 and 26 and remand for the trial court to vacate the sentences imposed on those counts. Furthermore, we remand to the trial court for

10

correction of the written judgment as to Count 16 to reflect the oral pronouncement of sentence.

In all other respects, the judgment is affirmed.

_____
Mary K. Hoff, Judge

Robert G. Dowd, Jr., Presiding Judge and Roy L. Richter, Judge, concur.

11