

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
                      )
           Respondent, )
                      )
     vs.                  )      No. SD37118
                      )      Filed: April 29, 2022
CLINTON M. BOYD, )
                      )
           Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones, Judge

### AFFIRMED AND REMANDED WITH DIRECTIONS

Clinton M. Boyd ("Boyd") challenges his convictions, following a jury trial, of two counts of first-degree statutory sodomy, three counts of first-degree child molestation, and one count of enticement of a child. In seven points relied on, Boyd argues that the trial court erred in: (1) refusing to sever Count VI from the rest of the charges; (2) entering a judgment and sentence on Count V for the unclassified felony of enticement of a child as there was insufficient evidence to support that charge; (3) failing to *sua sponte* declare a mistrial when the State elicited

unnecessary details of Boyd's prior domestic assault conviction; (4) failing to *sua sponte* declare a mistrial after the State elicited information that Boyd had previously been given probation for his past statutory rape convictions; (5) failing to *sua sponte* declare a mistrial after the State elicited information that Boyd had fathered eight children, did not have custody over them, and did not know where they currently lived; (6) failing to *sua sponte* declare a mistrial after the State asserted during closing argument that "no other child should have to promise not to tell what [Boyd] did to them[]"; and (7) executing its written judgment indicating in Count VI that Boyd was convicted of first-degree child molestation when Boyd was actually convicted of first-degree statutory sodomy. Finding merit to Boyd's Point VII, we grant the same and remand to the trial court to correct the written judgment, via a *nunc pro tunc* order, in conformance with the trial court's oral pronouncement of sentence as to Count VI. Boyd's remaining points lack merit, and are accordingly denied.

## Facts and Procedural History

### *Boyd's Prior Criminal History*

In 2001, Boyd was charged with two counts of statutory rape of two sisters who were 14 and 15 at the time. Boyd first took each girl to buy a dress and then had sex with each of them. The assaults were only reported after one of the girls became pregnant. Boyd pled guilty to the charges in July 2004, and was placed on probation.

In late 2004, Boyd pleaded guilty to third-degree domestic assault against B.E. Boyd's probation was revoked and he served two-and-a-half years in prison where he completed the Missouri Sex Offender Program ("MOSOP").

### *Relationship with D.D.*

In late 2003, Boyd had a daughter (D.D.). After Boyd was released from prison in November 2007, D.D.'s mother would ask Boyd to come get D.D. and take care of her. D.D. was adopted in late 2010 when she was seven years old, at which time she disclosed that Boyd had "touched her spot" when she was five years old.

### *Boyd's Relationship with Q.M. and H.M.*

In 2018, Boyd persuaded L.M. to move from California to Springfield, Missouri. Boyd knew L.M. from high school in California and told L.M. that the cost of living was cheaper and that they would be together if she moved to Missouri. L.M. moved to Springfield with her ex-boyfriend and her children in March 2018. L.M. had four children, including two daughters—Q.M. and H.M.—who were ages twelve and ten respectively.[1]

Boyd began spending time at L.M.'s home daily after L.M.'s ex-boyfriend moved out. L.M. worked nights, and Boyd would sometimes watch Q.M. and H.M. Boyd would also take the girls places. One day, Boyd told L.M. and H.M. that he was taking H.M. to see his daughter so that they could play together. Instead, Boyd took H.M. to a friend's house and made her wear a dress that L.M. had tried to throw away because it was "inappropriate" for someone H.M.'s age. Boyd wanted to take "sexy pictures" of H.M., but she was scared and uncomfortable, so Boyd showed H.M. similar pictures that he had taken of one of his daughters to make H.M. more comfortable. Boyd made H.M. pose in the dress, took photographs of her, and then touched her inappropriately. Boyd told H.M. that if she was older, she would be his girlfriend.

Boyd also molested H.M.'s older sister, Q.M. On one occasion, Boyd came into Q.M.'s bedroom while Q.M. was sleeping and touched her genitals. Q.M. woke up during this assault but

---

[1] Both Q.M. and H.M. had extensive medical issues at the time, including mental health issues.

pretended to be asleep. Another time, Boyd came into the bathroom while Q.M. was in the shower and reached through the shower curtain touching her breasts and genitals.

On October 29, 2019, H.M. told her mother that Boyd "was taking inappropriate pictures of her with the dress that [L.M.] thought [L.M.] had gotten rid of." H.M. told L.M. that on the day Boyd said he was taking H.M. to play with his daughter, he instead took H.M. to one of his friend's houses where he touched her inappropriately. L.M. texted Boyd about H.M.'s disclosure advising him that she was taking H.M. to the police station.

While L.M. was attempting to schedule H.M.'s forensic interview, Q.M. disclosed to L.M. that Boyd had molested her while she was in bed and in the shower. L.M. arranged for both girls to have a forensic interview at the Children's Advocacy Center ("CAC") on December 5, 2019.

*Charges*

Boyd was subsequently charged by Second Amended Felony Information, as a prior and persistent offender, with:

•felony statutory sodomy in the first degree (Count I), pursuant to section 566.062,[2] in that on or about on or between January 1, 2019 and October 28, 2019, Boyd had deviate sexual intercourse with Q.M., who was then a child less than fourteen years old, by touching Q.M.'s genitals with his hand.

•the class A felony of child molestation in the first degree (Count II), pursuant to section 566.067, in that on or about on or between January 1, 2019 and October 28, 2019, Boyd knowingly subjected Q.M., who was less than 14 years old, to sexual contact by touching Q.M.'s breast.

•the class A felony of child molestation in the first degree (Count III), pursuant to section 566.067, in that on or about on or between January 1, 2017 and October 28, 2019, Boyd knowingly subjected H.M., who was less than 12 years old, to sexual contact by touching H.M.'s breast through her clothing.

•the class A felony of child molestation in the first degree (Count IV), pursuant to section 566.067, in that on or about on or between January 1, 2017 and October 28, 2019, Boyd

---

[2] All references to statutes are to RSMo Noncum. Supp. 2014, unless otherwise indicated.

4

knowingly subjected H.M., who was less than 12 years old, to sexual contact by touching H.M.'s breast under her clothing.

•felony enticement of a child (Count V), pursuant to section 566.151, in that on or between January 1, 2017 and October 28, 2019, Boyd, who was twenty-one years of age or older, enticed H.M., who was less than fifteen years of age, by having H.M. wear a short dress and pose for pictures, and Boyd did so for the purpose of engaging in sexual conduct with a person less than fifteen years of age.

•felony statutory sodomy in the first degree (Count VI), pursuant to section 566.062, in that on or between March 30, 2008 and March 30, 2011, Boyd, for the purpose of arousing or gratifying the sexual desire of any person, had deviate sexual intercourse with D.D., who was then less than twelve years old, by touching D.D.'s genitals with the his hand.

### *Pre-Trial Motions*

On January 13, 2021, the State filed a "Notice of Intention to Use and Motion to Admit Hearsay Statements of a Child Under Fourteen, Pursuant to Section 491.075 RSMo." The motion stated, in part, that the State intended to offer as substantive evidence statements made by D.D., Q.M., and H.M. Thereafter, Boyd filed a "Motion for Severance of Offenses" of Counts I-V and Counts VI-IX.[3] The motion stated that Counts I-V involved allegations relating to siblings H.M. and Q.M. for conduct that arose between 2018 and 2019. Counts VI-IX involved allegations occurring between 2008 and 2011 regarding D.D. Boyd argued that trying all the offenses together would result in substantial prejudice to him because the jury would likely consider evidence of guilt on one charge as evidence of guilt of another charge.

On January 27, 2021, the State then filed a "Notice of Intent to Present Propensity Evidence," and a motion in opposition to Boyd's motion for severance with suggestions in support.

After hearing argument on all the motions, the trial court found that the propensity evidence that the State sought to introduce was reliable and the probative value of the propensity evidence "greatly exceeds the prejudicial effect of said evidence." The trial court denied Boyd's motion to

---

[3] Boyd was originally charged with nine offenses, but the State later dismissed Counts VII-IX.

sever Counts VI-IX, noting that "even if the counts were severed as requested, the Court has admitted the acts charged in those counts as propensity evidence. As such, the Jury would be hearing the evidence on those counts and [Boyd] would suffer no additional prejudice by denial of the severance motion." The trial court further noted that it was confident that the jury would follow the court's instructions on how it should consider the evidence and that trying all the counts together was in the best interest of judicial economy.

Prior to trial, Boyd renewed his motion to sever the count that charged sexual abuse of D.D. The trial court again denied the motion.

### *Trial*

Trial commenced on February 18, 2021. At trial, the State introduced testimony from H.M., Q.M., and D.D. regarding Boyd's sexual abuse, and played all three of the children's forensic interviews. The State also submitted all three victims' body diagrams from their forensic interviews indicating where Boyd had touched them. The State further submitted the anatomical drawings that H.M. and Q.M. completed on the stand during their testimony showing where Boyd had touched them.

L.M. also testified about the disclosures H.M. and Q.M. made to her regarding Boyd's abuse. The State called the forensic interviewers for the children, as well as two investigators from the Springfield Police Department.

Boyd testified on his own behalf. Boyd admitted that he had two prior convictions of statutory sodomy for having sexual intercourse with two girls in 2001-2002. He pled guilty to the two counts of rape, and was placed on probation. Boyd stated that while in prison, he completed the MOSOP for sexual offenders.

6

Boyd testified that after he was released from prison in November 2007, he frequently watched his minor daughter D.D. Boyd denied being attracted to D.D. and denied touching her.

Boyd testified that after L.M. moved to Missouri, he would watch Q.M. and H.M. while L.M. was at work, which was mainly at night. He denied having any attraction to the girls stating "they're like my own daughters[,]" and that being around them was not a trigger for him. Boyd denied touching H.M. and Q.M. sexually.

On cross-examination, Boyd admitted that he had a prior conviction for domestic assault when he recklessly caused injury to B.E. by striking B.E. in the head. This assault took place while he was on probation for the statutory sodomy convictions and as a result, his probation was revoked and he served two-and-a-half years in prison. Boyd also admitted he had a prior conviction for bringing a stun gun to high school.

Boyd stated that on October 30, 2019, the day after L.M. texted him that she was going to the police, he got a brand new phone and number and that he stayed away from his apartment for a period of time.

Boyd also admitted that he had eight children, but did not have custody over any of them and did not know where they all lived.

During closing argument, the prosecutor argued that Boyd's purpose in committing the charged offenses was to arouse his sexual desire. The prosecutor argued that there was no other reason why Boyd would reach into the shower to touch Q.M.'s breasts or rub H.M.'s breasts over and under her clothing. There was also no other reason why Boyd would make H.M. wear a short dress and "pose for pictures at a location other than H.M.'s home." The prosecutor argued that Boyd touched H.M.'s genitals and this was sexual contact after bringing H.M. to his home alone.

7

The prosecutor noted that Boyd also purchased dresses for his prior victims before having sex with them.

Defense counsel argued that the prosecutor had discussed many things that were unrelated to the underlying charges such as the number of women Boyd dated, the number of children he had, and his prior conviction for bringing a stun gun into high school. Defense counsel distinguished Boyd's conduct in his earlier convictions from the present conduct, by arguing that when Boyd purchased dresses for his prior victims, he was courting the girls by buying them gifts. In response, the prosecutor argued that Boyd had a "dress fetish" and stated that "[t]he defendant has given you every reason not to believe another one of his lies. [D.D., Q.M., and H.M.] deserve justice for what happened to them, and no other child should have to promise not to tell what [Boyd] did to them[.]"

The jury found Boyd guilty of all counts. The parties waived sentencing by the jury.

### Post-Trial Proceedings

On March 11, 2021, Boyd filed a "Motion for New Trial." At the sentencing hearing on May 14, 2021, the trial court heard argument and denied the motion. The trial court sentenced Boyd to a total of 75 years in prison. This Court notes that in the "Second Corrected Judgment" entered by the trial court, Count VI indicates that Boyd was found guilty of child molestation in the first degree, when in fact he was charged with statutory sodomy in the first degree and the jury found him guilty of statutory sodomy in the first degree.

This appeal followed. In seven points on appeal, Boyd argues:

Point I.
The trial court erred in refusing to sever Count VI from the rest of the charges because this violated Mr. Boyd's right to a fair trial and due process, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that there was substantial prejudice to Mr. Boyd having to defendant [sic] himself

8

against five charges involving Q.M. and H.M. that were alleged to have taken place against the two sisters from January of 2017 through October 28, 2019 and against one charge involving D.D., a much younger child, that was alleged to have taken place years earlier from March 20, 2008 through March 30, 2011.

## Point II.

The trial court erred in entering judgment and sentence for the unclassified felony of enticement of a child (Count V), because this violated Mr. Boyd's rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that there was insufficient evidence to prove beyond a reasonable doubt that at the time Mr. Boyd made H.M. pose for pictures wearing a dress, he was doing so for the purpose of engaging in sexual conduct.

## Point III.

The trial court plainly erred in failing to *sua sponte* declare a mistrial after the State elicited unnecessary details regarding Mr. Boyd's prior domestic assault conviction, because this violated Mr. Boyd's right to a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the name of Mr. Boyd's past victim and the fact that he "recklessly caused physical injury" to her by striking her "in the head" was irrelevant to the charged crimes, and the prosecutor only elicited this information to make Mr. Boyd appear to be a bad person in the eyes of the jury; furthermore, given that the evidence against Mr. Boyd was not overwhelming because there was no physical evidence suggesting Mr. Boyd was guilty of the charged offenses, there were no witnesses to the charged crimes other than the alleged victims, Mr. Boyd did not confess to the charged offenses, and there were reasons to doubt the credibility of each of the victims, the admission of this improper evidence constituted a manifest injustice.

## Point IV.

The trial court plainly erred in failing to *sua sponte* declare a mistrial after the State elicited information that Mr. Boyd had previously been given probation for his statutory rape convictions after he had already testified he spent two-and-a-half years in prison for the charges, because this violated Mr. Boyd's right to a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the purpose of eliciting this information was to imply to the jury that Mr. Boyd had committed further bad acts in order for his probation to be revoked; furthermore, given that the evidence against Mr. Boyd was not overwhelming because there was no physical evidence suggesting Mr. Boyd was guilty of the charged offenses, there were no witnesses to the charged crimes other than the alleged victims, Mr. Boyd did not confess to the charged offenses, and there were reasons to doubt the credibility of each of the victims, the admission of this improper evidence constituted a manifest injustice.

9

Point V.

The trial court plainly erred in failing to *sua sponte* declare a mistrial after the State elicited information that Mr. Boyd had fathered eight children, that he did not have custody over any of them, and that he did not know where all of his kids current [sic] live, because this violated Mr. Boyd's right to a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the purpose of eliciting this information was to imply to the jury that Mr. Boyd was a bad person and father; furthermore, given that the evidence against Mr. Boyd was not overwhelming because there was no physical evidence suggesting Mr. Boyd was guilty of the charged offenses, there were no witnesses to the charged crimes other than the alleged victims, Mr. Boyd did not confess to the charged offenses, and there were reasons to doubt the credibility of each of the victims, the admission of this improper evidence constituted a manifest injustice.

Point VI.

The trial court plainly erred in failing to *sua sponte* declare a mistrial after the State asserted during its closing argument that "no other child should have to promise not to tell what Clinton Boyd did to them," because this violated Mr. Boyd's right to a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the State was making an improper "future dangerousness" argument; furthermore, given that the evidence against Mr. Boyd was not overwhelming because there was no physical evidence suggesting Mr. Boyd was guilty of the charged offenses, there were no witnesses to the charged crimes other than the alleged victims, Mr. Boyd did not confess to the charged offenses, and there were reasons to doubt the credibility of each of the victims, the admission of this improper evidence constituted a manifest injustice.

Point VII.

The trial court erred in executing its written judgment indicating Mr. Boyd was convicted of child molestation in the first degree, in violation of his right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that Mr. Boyd was actually charged with and convicted of statutory sodomy in the first degree, and, therefore, this a clerical error that should be corrected under 29.12(c).

**Principles of Review**

We review the trial court's decision to sever charges (or not sever charges) for an abuse of discretion. ***State v. Johnson***, 576 S.W.3d 205, 229 (Mo.App. W.D. 2019).

In reviewing a challenge to support the sufficiency of the evidence to support a conviction, our

10

review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Lange*, 560 S.W.3d 927, 929 (Mo.App. S.D. 2018).

Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. Under this standard, the defendant bears the burden of establishing manifest injustice amounting to plain error.

*State v. Yount*, SC99317, at *1, 2022 WL 1019014 (Mo. banc Apr. 5, 2022) (internal quotations and citations omitted).

**Analysis**

*Point I: Alleged Failure to Sever Count VI*

In his first point, Boyd argues that the trial court "erred in refusing to sever Count VI from the rest of the charges[.]" He suggests that this prejudiced his defense, in that he

ha[d] to defendant [sic] himself against five charges involving Q.M. and H.M. that were alleged to have taken place against the two sisters from January of 2017 through October 28, 2019 and against one charge involving D.D., a much younger child, that was alleged to have taken place years earlier from March 20, 2008 through March 30, 2011.

The trial court has broad discretion in its determination as to whether or not to sever charges. *Johnson*, 576 S.W.3d at 229.

We will not disturb its decision unless we find an abuse of discretion, in other words, that the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.

The court may grant a severance motion only upon a written motion of the defendant and upon a particularized showing of substantial prejudice.

11

*Id.* (internal quotations and citations omitted). "Substantial prejudice" in this context is defined as "a bias or discrimination against the defendant . . . which is actually existing or real and not one which is merely imaginary, illusionary or nominal." § 545.885.2.

As Boyd concedes in his brief, he "did not challenge below that joinder was permissible." As such, his instant challenge is not preserved for review. Moreover, Boyd also admits that "[i]t is true that had the charges been severed, the State nonetheless could have admitted the allegations of the victims in question pursuant to Section 18(c) of the Missouri Constitution." Thus, Boyd fails to meet the threshold for a "particularized showing of substantial prejudice." *See Johnson*, 576 S.W.3d at 229 (internal quotation and citation omitted).

Boyd's Point I is accordingly denied.

### Point II:  Sufficiency of the Evidence as to Count V

In his second point, Boyd argues that there was insufficient evidence to support Count V, the unclassified felony of enticement of a child. Specifically, he claims that the evidence did not support the reasonable inference that "at the time Mr. Boyd made H.M. pose for pictures wearing a dress, he was doing so for the purpose of engaging in sexual conduct."

> To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but, rather, accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence and inferences. This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. In reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court does not act as a super juror with veto powers but gives great deference to the trier of fact.

*Lange*, 560 S.W.3d at 929.

Boyd's instant argument relies on evidence and inferences favorable to him (which we must ignore), and fails to confront the reasonable inferences available from the evidence favorable to his conviction (which we must credit). *See id.* While the evidence of Boyd's intent was circumstantial, "[i]ntent is rarely susceptible to proof by direct evidence and is most often inferred circumstantially." *State v. Perkins*, 640 S.W.3d 498, 502 (Mo.App. S.D. 2022) (internal quotation and citation omitted). "The necessary intent may be based upon circumstantial evidence or inferred from surrounding facts, such as evidence of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." *Id.* (internal quotation and citation omitted).

It was a reasonable available inference that Boyd made H.M. pose for pictures in a dress for the purpose of engaging in sexual conduct—Boyd's argument on appeal poses no alternative purpose for Boyd's conduct, much less an alternative purpose supported by the evidence in the light most favorable to his conviction. Boyd's Point II is denied.

### *Points III-VI: Alleged Plain Error*

Boyd's Points III-VI raise various claims of plain error.

> Generally, this Court does not review unpreserved claims of error. Rule 30.20 alters the general rule by giving appellate courts discretion to review 'plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.' Rule 30.20. Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. The plain language of Rule 30.20 demonstrates that not every allegation of plain error is entitled to review. The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. Unless manifest injustice or a miscarriage of justice is shown, an appellate court should decline to review for plain error under Rule 30.20. Finally, the defendant bears the burden of demonstrating manifest injustice entitling him to plain error review.[4]

---

[4] All rule references are to Missouri Court Rules (2020).

*State v. Brandolese*, 601 S.W.3d 519, 525–26 (Mo. banc 2020) (internal quotations and citations omitted).

None of Boyd's Points III-VI facially establish substantial grounds for believing that manifest injustice or a miscarriage of justice has occurred. *See id.* Points III-VI are accordingly denied.

### Point VII:  Clerical Error in Trial Court's Sentence on Count VI

In his seventh point, Boyd argues that the trial court "erred in executing its written judgment indicating Mr. Boyd was convicted of child molestation in the first degree . . . in that Mr. Boyd was actually charged with and convicted of statutory sodomy in the first degree." Boyd suggests that "this . . . clerical error . . . should be corrected under [Rule] 29.12(c)."

As the State indicates in its brief:

> The written judgment ("Second Corrected Judgment") shows that Defendant was sentenced to twenty-five years for each count. However, there is an error on page two of the judgment that states Count VI was for child molestation in the first degree that should be corrected to state that the conviction was for statutory sodomy in the first degree.

> For the foregoing reasons, the State concedes that correction via a *nunc pro tunc* order in the trial court is proper. *State v. Sanders*, 481 S.W.3d 907, 912 (Mo. App. E.D. 2016). This Court should direct the trial court to correct the written judgment via a *nunc pro tunc* order to conform to the trial court's oral pronouncement of Defendant's sentences at the time of sentencing.

Boyd's Point VII is granted, and we remand to the trial court to correct the written judgment via a *nunc pro tunc* order in conformance with its oral pronouncement of sentence as to Count VI.

The trial court's judgment is affirmed in all other respects.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

JACK A. L. GOODMAN, J. - CONCURS

14