

# In the Missouri Court of Appeals
## Eastern District

DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101278 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of the City of St. Louis |
| | ) | |
| MARSHALL T. BURRAGE, | ) | Honorable Margaret M. Neill |
| | ) | |
| Appellant. | ) | Filed: June 30, 2015 |

Marshall Burrage appeals from the judgment entered after a jury trial on his convictions for second degree felony murder, attempted delivery of marijuana and armed criminal action. We affirm.

Burrage and his cousin—a known drug dealer from Kansas City—were driving around St. Louis one day when Burrage got a call from a person whose friend (hereafter "the victim") was interested in purchasing marijuana. Burrage was known to have a connection to people who sold marijuana, namely his cousin. Burrage asked his cousin the cost for three pounds of marijuana and then conveyed that information to the person on the phone and told him to have the victim call Burrage. When the victim called, Burrage confirmed the price, and the victim agreed to buy three pounds of marijuana for $1950. Burrage expected to get "something" when the deal was done.

Burrage drove to his house—where his cousin was staying while in town—to retrieve the marijuana stashed in his cousin's suitcases. They put the drugs in the vehicle, and Burrage called

the buyers about where to meet. Burrage suggested a couple of places, but ultimately the buyers wanted to meet in their own neighborhood. Burrage drove to the designated meeting place, and, as they approached, his cousin slipped into the back passenger seat because he did not want any of the buyers sitting behind him.

As Burrage pulled up to the meeting spot, there were men waiting. When the vehicle stopped, the victim walked around the back of the vehicle, got into the front passenger seat and kept the door propped open with his foot. Burrage and his cousin asked about the money, and then Burrage noticed one of the other men (hereafter "the victim's accomplice") approaching the vehicle. The victim's accomplice attempted to get inside the back seat on the driver's side. At this point, Burrage also noticed that the victim did not appear to have any money and figured out that they were going to be robbed. In fact, as it turned out, the victim and his accomplices never had any intention of paying for the drugs and had always planned to rob Burrage and his cousin.

Burrage saw the victim's accomplice reach for a bulge at his side and then saw the nose of a gun. Multiple shots were fired. The victim jumped out, and Burrage drove away. Burrage heard more shots being fired as they drove away, and the victim's accomplice was seen on a surveillance video firing a .45 caliber gun as the vehicle drove away. All of the seven casings recovered from the scene were .45 caliber and had been fired from the same automatic weapon. But there was also a copper jacket found at the scene that could have been fired from an automatic weapon or a revolver. Unlike an automatic weapon, revolvers do not discharge their casings. Burrage knew his cousin usually carried a big revolver and told police that he believed his cousin had his gun with him that day; he also said he "probably" fired the gun during the incident. The victim was later found nearby, having died of a gunshot wound through his back. The nature of the wound was consistent with either being fired by a person seated behind the

2

victim (which could have been Burrage's cousin) or by a person off to the victim's left side (which could have been the victim's accomplice).

The jury found Burrage guilty—on a theory of accomplice liability—of attempting to sell more than five grams of marijuana, armed criminal action and second degree felony murder. On appeal, Burrage challenges the sufficiency of the evidence on all three counts.

Our review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. State v. Bowman, 337 S.W.3d 679, 688 (Mo. banc. 2011). The evidence is viewed in the light most favorable to the verdict. Id. The evidence and inferences supporting the conviction are accepted as true and all contrary evidence and inferences are disregarded "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993). We must presume that any conflicting inferences were resolved in favor of the prosecution and must defer to that resolution. State v. Chaney, 967 S.W.2d 47, 53 (Mo. banc 1998).

Burrage argues that there was insufficient evidence to support the attempted delivery of marijuana because he was merely present during the crime. He also contends that there was no evidence either he or his cousin had a weapon with them, and therefore, the armed criminal action conviction cannot stand. Finally, Burrage contends that there was insufficient evidence to support the second degree felony murder conviction because he was not guilty of the underlying felony and because the victim's death was a result of his own attempt to steal the drugs, not a result of the drug deal. We disagree.

First, there was overwhelming evidence of Burrage's participation as an accomplice in the underlying felony of attempting to deliver the marijuana. A person is criminally responsible

for the conduct of another when "either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Section 562.041.1(2). Here, Burrage's accomplice liability is based on his conduct in aiding his cousin in attempting to deliver a controlled substance. See Section 195.211.1 and Section 564.011.1. Burrage's claim that he was "merely present" at the scene of the crime is belied by the record. "While merely being present before or during the commission of a crime is not sufficient to find accomplice liability, any affirmative act, even mere encouragement, is enough. Encouragement is the equivalent of conduct that by any means countenances or approves the criminal action of another." State v. Hoosier, 267 S.W.3d 767, 771 (Mo. App. S.D. 2008) (internal citations and quotation marks omitted).

Here, Burrage was more than just aware of his cousin's criminal conduct, he was an active and affirmative participant in the attempt to sell the marijuana. He set up the deal, speaking to both interested parties on his cousin's behalf as to amount, price and location for delivery. He drove to retrieve the drugs, which were stored at his home. He drove to the delivery location. He stayed in the vehicle when the victim got in and asked him for the money. He drove himself and his cousin away from the scene after the shots were fired. See id. at 771-72 (defendant went along to drug transaction, witnessed entire transaction, did not try to stop it and showed no sign of surprise at what was happening); see also State v. Jones, 296 S.W.3d 506, 510 (Mo. App. E.D. 2009) (defendant knew of robbery and drove accomplice away); State v. Meuir, 138 S.W.3d 137, 143-44 (Mo. App. S.D. 2004) (defendant helped plan robbery and acted as driver and lookout). This is sufficient evidence from which the jury could find Burrage guilty of attempt to deliver a controlled substance.

Second, Burrage's claim that there was no evidence that he or his cousin had a weapon with them is also belied by the record. Burrage's own statements to police support the conclusion that his cousin had the gun he usually carried with him the day of this drug deal and that his cousin fired it during the attempted commission of the crime. Moreover, the physical evidence supports the inference that another gun besides the .45 caliber automatic weapon fired by the victim's accomplice could have been fired from directly behind the victim, suggesting that Burrage's cousin had and used his weapon. Therefore, there was sufficient evidence to support the armed criminal action conviction on an accomplice theory. See Section 571.015.1.

Finally, there was sufficient evidence from which a reasonable juror could conclude that the victim's death was a result of the attempted delivery of drugs. A person commits second degree felony murder if he "[c]ommits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony." Section 565.021.1(2). We use a "foreseeability-proximate cause concept of homicide responsibility" in felony murder cases. State v. Manuel, 443 S.W.3d 669, 676 (Mo. App. W.D. 2014) (citing State v. Baker, 607 S.W.2d 153, 156 (Mo. banc 1980) and State v. Moore, 580 S.W.2d 747, 752 (Mo. banc 1979)). The identity of the actual killer is irrelevant, and a defendant may be responsible for any deaths that are the natural and proximate result of the crime unless there is an independent intervening cause. Moore, 580 S.W.2d at 752. Thus, in Moore, a bystander firing a weapon to thwart a robbery—which ended up killing another innocent bystander—was deemed not to be an independent intervening cause of that death. Id. at 752-53. Rather, it was foreseeable that a robbery attempt would meet with or

5

provoke resistance, and thus the robbery attempt "set into motion the chain of events" that caused that death. Id. Thus, those involved in the robbery were also guilty of felony murder.

Likewise, in general "it is foreseeable a death could result [from] an illegal drug deal." State v. Blunt, 863 S.W.2d 370, 372 (Mo. App. E.D. 1993). In Blunt, a drug-buyer was shot by the defendant's accomplice drug-dealer after she resisted paying for the drugs. Id. This Court held that the death was a foreseeable result of the drug deal, without addressing whether there was any evidence that the defendant had been aware of the presence of weapons or expected that the buyer might try not to pay. Id. Death is a foreseeable part of an illegal drug transaction because guns are commonly carried and used by participants in drug deals. One reason a person might bring a weapon to a drug deal is to protect their drugs or their money from being stolen. Thus, robberies are themselves a foreseeable part of an illegal drug deal as well. Burrage acknowledged these general realities when he claimed that he did not carry a gun because he did not feel threatened—even with a valuable amount of drugs in his possession—but admitted that sometimes things go wrong in a drug deal.

In addition to the general foreseeability of violent robberies as part of any drug deal, there was specific evidence of foreseeability in this case. Burrage's cousin brought a weapon to the drug deal and took measures to make sure no one was behind him by getting into the back seat. Burrage himself was able to quickly identify that this deal was going wrong when the victim appeared to have no money and his accomplice approached the car. This suggests that the robbery was foreseeable to both Burrage and his cousin.

Because the robbery itself was also a foreseeable part of the drug deal, Burrage's claim that this was a "robbery gone bad" and not a "drug deal gone bad" has no merit. The foreseeability of this attempted robbery does not depend on whether or not the buyers ever

intended to purchase the drugs. In <u>Manuel</u>, the victim initiated the drug buy and, then upon suspicion that the drugs were fake, drove away and was shot and killed. 443 S.W.3d at 677. The court pointed out that whether the victim was "attempting to steal drugs" or "simply became nervous" that the drugs were fake is "immaterial." <u>Id</u>. Rather, the attempt to sell the drugs and the victim's death "were parts of one continuous transaction, and were closely connected in time, place and causal relation." <u>Id</u>. Likewise, in this case, the attempt to sell the drugs and the victim's death were part of one transaction, and it is immaterial that the buyer was attempting to simultaneously steal the drugs. Moreover, the robbery could not have been attempted unless and until Burrage and his cousin arrived and attempted to sell the drugs. Thus, it cannot be said that the robbery was independent of the drug deal, such that it relieves Burrage of criminal responsibility for this death.

In sum, there was sufficient evidence from which a juror could have concluded that the victim in this case died as a natural and proximate result of the attempt to deliver drugs, a crime for which there was ample evidence of Burrage's participation therein. The attempted robbery during the attempt to deliver the drugs was not an independent intervening cause of the victim's death.

All points are denied, and the judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P.J. and
Gary M. Gaertner, Jr., J., concur.

7