**STATE of Missouri, Respondent,**

v.

**Ricky J. HARDING, Jr., Appellant.**

**ED 104013**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: April 25, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 8, 2017

Motion for Transfer to Supreme Court Denied October 5, 2017

Samuel E. Buffaloe, Office of State Public Defender, Columbia, MO, for appellant.

Christine Lesicko, Assistant Attorney General, Jefferson City, MO, for respondent.

Lisa P. Page, Judge

Ricky Harding appeals his conviction after a jury trial for felony murder, unlawful possession of a firearm, domestic assault in the second degree, and four counts of endangering the welfare of a child in the second degree. We affirm in part and reverse and remand in part.

## BACKGROUND [1]

In 2014, twelve-year-old A.L. ("Daughter") and nine-year-old Am.L. ("Son") lived with their mother ("Mother" or "Victim"), step-father ("Defendant") and two younger siblings [2] near Mexico, Missouri. Mother

and Defendant argued almost every day, and the children were told to stay in their rooms during these altercations. One day, Defendant showed Son his 1911 Colt .45 pistol that he acquired "off the street." Defendant, a prior felony offender, knew it was illegal for him to possess a firearm.

In the early morning hours of May 25, 2014, Daughter awoke to the sound of an argument between her Mother and Defendant. She peeked out of her bedroom into the living room, saw Defendant screaming at her Mother, and saw her Mother crying. Daughter listened to the argument, and when she later peeked out again, she saw her Mother grab Defendant's gun from between the couch cushions. Defendant stood and moved for the gun. Daughter saw her Mother hunch over, hiding the gun between her legs, with Defendant behind her. Mother struggling for control of the weapon. Daughter hid behind her door, and then heard a shot.

Daughter ran into the living room and saw her Mother lying on the floor, bleeding profusely. Son and the two younger siblings, now awake, also rushed into the room. Their Mother began scooting toward the garage door, and Daughter called 911. Daughter began helping her Mother inch toward the truck in the garage to get her to the hospital. However, Defendant drove off alone, leaving all four children with their dying Mother. Daughter led her siblings into Son's room, where they awaited the arrival of the police.

Paramedics arrived and transported Mother to the hospital. Having lost too much blood to be resuscitated, Mother died. Defendant arrived, agitated and ar-

---

1. Additional facts will be discussed in the analysis section, as pertinent to each point on appeal.

2. Defendant is the biological father of the youngest child. The biological father of the

three older children is Tony Lewis, who has not been part of the children's lives for many years and whose parental rights have been terminated.

gumentative, at the hospital sometime thereafter. He was arrested outside the emergency room, and was charged with second degree felony murder, unlawful possession of a firearm, domestic assault in the second degree, armed criminal action, and four counts of endangering the welfare of a child in the first degree.

After this incident, the children began seeing Timothy Taylor, a licensed professional counselor, who diagnosed the children with multiple psychological conditions, including post-traumatic stress disorder. The children told their counselor they were fearful of Defendant.

After a five-day trial, the jury considered the State's charges against Defendant, as well as instructions for voluntary and involuntary manslaughter and endangering the welfare of a child in the second degree. The jury found Defendant guilty of felony murder, unlawful possession of a firearm, domestic assault in the second degree and four counts of endangerment in the second degree. He received a total of 30 years of imprisonment. This appeal follows.

## DISCUSSION

Defendant submits seven points on appeal, contending: (I) insufficient evidence existed to support the felony-murder charge because Victim was not killed as a result of Defendant being a felon-in-possession; (II) the felony-murder jury instruction improperly relieved the State from proving a contested element of the offense; (III) insufficient evidence existed to support the four counts of child endangerment because Defendant did not fire a gun near the children, nor had he negligently left the children alone; (IV) a continuance should have been granted so that Defendant could prepare and call an untimely-disclosed witness; (V) the court erroneously excluded evidence concerning the older three children's previous exposure to domestic violence perpetrated by their father; (VI) Defendant's proposed jury instruction for a necessity defense should have been granted; and (VII) the written judgment contains an error needing correction.

## Point I—Felon-in-Possession Conviction Sufficient as Underlying Felony for Felony Murder

In his first point on appeal, Defendant contends the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence and entering judgment for the class A felony of second degree felony murder. Specifically, Defendant argues the evidence was insufficient to establish that Victim's death was caused as a result of him being a felon in possession of a firearm. Thus, Defendant asserts the court violated his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution. Absent this alleged error, Defendant maintains he would not have been convicted of felony murder, and therefore his conviction on this count must be reversed. We disagree.

### Standard of Review

Our review is limited to determining whether sufficient evidence exists from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. State v. Burrage, 465 S.W.3d 77, 79 (Mo. App. E.D. 2015). "[T]he relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Bateman, 318 S.W.3d 681, 687 (Mo. banc 2010).

## Analysis

■ "A person commits the offense of murder in the second degree [felony murder] if he or she . . . commits or attempts to commit *any* felony, and, in the perpetration or the attempted perpetration of such felony . . . another person is killed as a result of the perpetration or attempted perpetration of such felony . . . ." Section 565.021.1(2) (emphasis added).[3] "[T]he practical effect of the felony-murder rule [is that it] permits the felonious intent necessary to a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony." State v. Rumble, 680 S.W.2d 939, 942 (Mo. banc 1984).

"The plain and ordinary meaning of '*any*' [as used in Section 565.021] indicates our legislature intended that *every* felony could serve as an underlying felony for the purpose of charging a defendant with second degree felony murder . . . ; [n]owhere does the statute limit the felony to be used in charging under this statute to any particular type of or specific felony, i.e., inherently dangerous, as some other states have done." State v. Bouser, 17 S.W.3d 130, 139 (Mo. App. W.D. 1999).[4]

Here, Defendant was charged with felony murder in connection with the commission of the class D felony of unlawful possession of a firearm, in violation of Section 571.070.1(1) ("A person commits the offense of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and . . . [s]uch person has been convicted of a felony under the laws of this state . . ."). It is undisputed Defendant was a felon at the time of Victim's death, in that Defendant was previously convicted of the class C felony of burglary in the second degree approximately twenty years ago. Additionally, it is not disputed that Defendant illegally obtained and possessed a 1911 Colt .45 Pistol—prohibited by said burglary conviction—through the events of the night in question. Thus, based on the plain language of Section 565.021.1(2), it is clear an unlawful-possession felony may potentially serve as the underlying felony for a felony-murder charge. See Bouser, 17 S.W.3d at 139.

■ However, we must also apply a "foreseeability-proximate cause" concept to the underlying felony when determining a person's responsibility for a felony-murder killing. Burrage, 465 S.W.3d at 80. "[A] defendant may be responsible for any deaths that are the natural and proximate result of the crime unless there is an intervening cause of that death." Id. To test causation, Missouri courts will often look at the underlying felony, generally, as well as at the facts of the particular case. See, e.g., State v. Blunt, 863 S.W.2d 370, 371–72 (Mo. App. E.D. 1993) ("Victim's death was the natural and proximate result of acts committed by [d]efendant's accomplice, [and] it is foreseeable a death could result [from participating in] an illegal drug deal."). A death is foreseeable if the underlying felony and killing were a part of a continuous transaction, "closely connected in time, place and causal relation." State v. Manuel, 443 S.W.3d 669, 677 (Mo. App. W.D. 2014) (quoting State v. Adams, 339 Mo. 926, 98 S.W.2d 632, 637 (Mo. 1936)). It is inconsequential that a defendant's conduct was not the immediate cause of death, but is sufficient if the conduct "was a

---

**3.** All statutory references are to RSMo Cum. Sup. 2014, unless otherwise indicated.

**4.** Cf. State v. Smallwood, 264 Kan. 69, 955 P.2d 1209 (1998) ("In order to apply the felony-murder doctrine: the underlying felony must be one which is inherently dangerous to human life . . .", where K.S.A. Section 21–5402 provides an exclusive list of felonies considered "inherently dangerous.").

contributing [proximate] cause of death." See State v. Scroggs, WD 70068, 521 S.W.3d 649, 2017 WL 1229924, at *5 (Mo. App. W. Dist. Apr. 4, 2017) (citing State v. Stallman, 289 S.W.3d 776, 779 (Mo. App. E.D. 2009)).

In Burrage, the defendant drove to the location of the drug sale while his cousin (the shooter) positioned himself in the back seat. 465 S.W.3d at 78. Upon arrival at the sale point, the defendant noticed the buyers were carrying firearms. Id. The buyers surrounded defendant's car, and soon thereafter exhibited their guns. Id. The defendant's cousin shot and killed one of the buyers, and defendant sped away. Id. at 78–79. In upholding the defendant's conviction of felony murder, this court reasoned defendant's behavior indicated he knew the drug sale was likely to "go wrong." Id. at 81. Insomuch as "[d]eath is a foreseeable part of an illegal drug transaction," a reasonable juror could find there was a sufficient nexus between the underlying crime—attempting to sell drugs— and the buyer's death. Id. at 81; see also State v. Glover, 330 Mo. 709, 50 S.W.2d 1049, 1056 (Mo. 1932) (upholding defendant's conviction for arson and felony murder because "the death of the fireman was the direct consequence of the intended arson" and defendant demonstrated more than mere negligence in "deliberately set fire to [the building]").

Whether a person's death can be a natural and proximate cause of a violation of the felon-in-possession law in order to support a charge of felony murder appears to be a matter of first impression in Missouri. Although not controlling, several other states have confronted this issue.

For instance, Defendant relies heavily on State v. Anderson, 666 N.W.2d 696 (Minn. 2003). In Anderson, the Minnesota Supreme Court reversed the defendant's felony-murder conviction predicated on the state's felon-in-possession law, holding "nothing about a felon's possession of a firearm, or of a stolen firearm—in the abstract—that in and of itself involves a special danger to human life." Id. at 701. Minnesota's felony-murder doctrine entails a two-part analysis: (1) the inherent dangerousness of the offense; and (2) the danger of the offense as committed. Id. at 701 n.6.[5]

However, the Supreme Court of Georgia has held that although the "the possession of a firearm by a previously convicted felon, is not inherently dangerous[,]" circumstances may well· exist under which felon-in-possession may be sufficient to sustain a felony-murder conviction. Ford v. State, 262 Ga. 602, 423 S.E.2d 255, 256 (1992). In Ford, as the defendant—a prior felon— attempted to unload a firearm while in his apartment, the weapon discharged, sending a bullet through the floor into the apartment below, where it struck and killed the victim. Id. at 255. The defendant was charged with felony-murder predicated on a violation of the Georgia's felon-in-possession law, because, like Missouri, Georgia's felony-murder statute did not restrict which felonies could underlie a felony-murder charge. Id. at 256. After defendant's conviction by a jury, the Georgia Supreme Court reversed, finding the felony of felon-in-possession was not "dangerous per se," nor were the "attendant circumstances" in this matter sufficient to create "a foreseeable risk of death." Id. (internal quotations omitted).[6]

**5.** See also People v. Satchell, 6 Cal.3d 28, 98 Cal.Rptr. 33, 489 P.2d 1361 (1971) (the unlawful possession of a firearm by a convicted felon, viewed in the abstract, is not inherently dangerous to human life and will not support a felony-murder charge.).

**6.** See also Griffin v. Com., 33 Va.App. 413, 533 S.E.2d 653, 655 (2000) (reversing a felo-

More recently, Georgia has upheld convictions for felony murder predicated on the state's felon-in-possession law. In Hines v. State, 276 Ga. 491, 578 S.E.2d 868 (2003), the defendant—a former felon—spent the day consuming large amounts of alcohol while concurrently hunting turkey with his friends. Id. at 872. Late in the day, the defendant shot a fellow-hunter when the defendant "took an unsafe shot at dusk, through heavy foliage, at a target eighty feet away that he had not positively identified as a turkey[.]" Id. In Hines, unlike Ford, the Georgia Supreme Court upheld the defendant's conviction of felony murder predicated on its felon-in-possession law, because "[u]nder the circumstances ... [the defendant's] illegal possession of a firearm created a foreseeable risk of death." Id.[7]

■ Similar to Georgia, Missouri's felony-murder law applies to all felonies, and also allows for the circumstances of the case to guide whether the death is the "natural and proximate result of the commission of the [underlying felony]." Scroggs, 521 S.W.3d at 656, 2017 WL 1229924 at *5 (death of a newborn infant is the natural and foreseeable consequence of failing to provide medical care where the mother knows that she consumed methamphetamines during pregnancy and immediately before birth.). Thus, Missouri's felon-

in-possession law is sufficient to *charge* a defendant with felony-murder, but the underlying facts dictate whether Missouri's felon-in-possession law is sufficient to *convict* a defendant of felony-murder.

■ Under Missouri law, the clear legislative intent restricts our courts from considering the inherent dangerousness (or lack thereof) of the underlying felony. Compare Section 565.021, RSMo Cum. Sup. 2014 (prescribing "any felony") with Sections 559.005 and Section 559.007, RSMo 1969 (enumerating only those felonies sufficient for unintentional felony murder). Thus, we may only review the underlying circumstances to determine whether the murder was foreseeable and a proximate cause of the underlying felony. See Blunt, 863 S.W.2d at 371–72.

■ In this case, we hold a rational juror could have found Defendant's unlawful possession of the firearm to be a foreseeably proximate cause of Victim's death, as the facts of this case indicate a causal link between Defendant's possession and Victim's death. Defendant purchased the stolen gun "off the street" and kept it loaded in a couch cushion where anyone could access it, including the young children residing in the home. Defendant was aware he was barred from possessing the pistol, yet knowingly introduced the firearm into the home where he and Victim

---

ny-murder conviction predicated on Virginia's felon-in-possession law, where the ex-felon-defendant was carelessly dancing with a firearm, which discharged, striking and killing the defendant's friend: "felony murder can be charged only where the initial felony and the accidental killing are part of one continuous transaction and are closely related in point of time, place and causal connection."); King v. Com., 6 Va.App. 351, 368 S.E.2d 704, 705 (1988) (An airline pilot hit turbulence, resulting in the injury and death of a passenger. The pilot possessed marijuana at that time. The court reversed the pilot's felony-murder conviction because it found no

causal link between his marijuana possession and the resulting death.).

7. See also Metts v. State, 270 Ga. 481, 511 S.E.2d 508, 510 (1999) (affirming felony-murder conviction predicated on its felon-in-possesion law, where the defendant pointed a loaded and cocked gun at a window, on the other side of which was a person, and where the window curtain accidentally struck his trigger finger: the defendant's "possession of the firearm was dangerous, and life-threatening, and had 'an undeniable connection to the homicide ...' ")

were prone to frequent domestic disputes. On the night of Victim's death, Defendant left the firearm tucked between two couch cushions, for anyone—including Defendant—to easily access. Victim and Defendant engaged in a lengthy verbal altercation, culminating in a physical fight for control of the pistol. Victim ended up hunched over the gun, hiding it between her legs. The weapon discharged, and the bullet injured Victim's femoral artery, ultimately causing her death. It is the fault of Defendant that this weapon became a part of the altercation that resulted in Victim's death—i.e., his felony-possession was closely connected in time, place and causal relation to her death—and therefore completely foreseeable that such an incident would occur. Burrage, 465 S.W.3d at 80; see also Scroggs, 521 S.W.3d at 655–56, 2017 WL 1229924 at *5.

Therefore, the trial court did not err in entering judgment for the felony-murder charge predicated on the felony of unlawful possession of a weapon.

Point I is denied.

**Point II—Felony–Murder Instructional Error Did Not Result in Manifest Injustice**

In his second point on appeal, Defendant contends the trial court plainly erred in submitting Instruction 6, the verdict director for the felony-murder count. Specifically, Defendant argues the instruction failed to inform the jury that, to find him guilty of felony murder, the jury must find the Victim "was killed *as a result of* the perpetration of an unlawful possession of a firearm," instead informing them they must find Victim "was killed *by* the perpetration of that unlawful possession of a firearm." (emphasis added). Defendant contends this Instruction did not conform to the Missouri Approved Instructions, and further relieved the State of proving a contested element of the offense, thereby violating his right to due process, to a properly instructed jury, and to a fair trial, as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution. Defendant maintains this error resulted in a manifest injustice, and therefore reversal and remand for new trial on the felony-murder charge is necessary.

### Standard of Review

The failure to give an instruction in accordance with MAI–CR is error, the prejudicial effect of which must be judicially determined. Rule 28.02(f); State v. Cooper, 215 S.W.3d 123, 125 (Mo. banc 2007). Without a specific objection during trial and corresponding issue in a motion for new trial, this court may only review for plain error pursuant to Rule 30.20. Cooper, 215 S.W.3d at 125. Instructional error rises to the level of plain error only if the instruction "so misdirected or so failed to adequately instruct the jury that it is apparent to the appellate court that the error affected the jury's verdict and caused manifest injustice or a miscarriage of justice." State v. Chambers, 998 S.W.2d 85, 89 (Mo. App. W.D. 1999).

### Analysis

As submitted to the jury, Instruction 6 read in pertinent part:

As to Count One, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about May 25, 2014, in the County of Audrain, State of Missouri, the defendant committed the felony of unlawful possession of a firearm, as submitted in Instruction No. 40, and

Second, that [Victim] was shot by a firearm possessed by defendant, and

Third, that [Victim] was killed *by the perpetration* of that unlawful possession of a firearm,

Then you will find the defendant guilty under Count One of murder in the second degree under this instruction.

(emphasis added). Defendant argues this instruction was defective because the phrase "... was killed *by* the perpetration of that unlawful possession ..." fails to conform to the Missouri approved instruction on this charge. MAI–CR 3d 313.06 requires the instruction state the Victim was killed "as a result of" the perpetration of that unlawful possession. Defendant then concludes this alteration "lessened the State's burden dramatically" and "eviscerated a large part of [Defendant's] defense." We examine whether this alteration "relieve[d] the State of its burden of proving each and every element of the crime." Cooper, 215 S.W.3d at 126.

As discussed in Point I, supra, it was uncontested that Defendant was a prior felon, purchased the firearm in question "off the street," and had it in his possession on the night Victim was killed. Further, the jury found Defendant's commission of this felony was a proximate cause of Victim's death. The substitution of the word "by" for the phrase "as a result" does not indicate to the jury they need merely find Defendant "constructively possessed" the firearm, as Defendant argues, but that he did so *as a felon.* The overarching theory of the State's case was that Defendant was guilty of felony murder based on being a felon-in-possession. See Chambers, 998 S.W.2d at 90 (omission of required "accomplice liability" language from jury instruction not prejudicial because this concept was woven into the state's presentation of the case). No element was missing nor improperly stacked in a way that lessened the State's burden, including proximate cause. We may adopt "a more practical view of the result of the instructional error." Manuel, 443 S.W.3d at 672. The word "by" is defined as "through the agency or instrumentality of" or "during the course of," which practically indicates the proper connection between the underlying felony and the killing. "*By*", MERRIAM-WEBSTER DICTIONARY. 2017. (https://merriam-webster.com) (March 29, 2017). Thus, the instructional error did not so misdirect or fail to adequately instruct the jury so as to affect its verdict, and no manifest injustice or a miscarriage of justice resulted.

Point II is denied.

**Point III—Evidence was Sufficient to Support Four Counts of Endangering the Welfare of a Child in the Second Degree**

In his third point on appeal, Defendant contends the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence, and in entering judgment and sentence for the four counts of the class C felony of endangering the welfare of a child in the second degree, pursuant to Section 568.050. Specifically, Defendant argues insufficient evidence existed to establish that Defendant negligently acted in a manner that created a substantial risk to the life, body, and health of his children because there was no evidence that the gun was fired near the children. He further argues there was not sufficient evidence that leaving the children endangered them since the eldest child, 12 years old, routinely babysat for her younger siblings in the past. Defendant thus asserts the court violated his right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution. Defendant concludes his convictions on the four endangerment counts must therefore be reversed.

## Standard of Review

We review the sufficiency of the evidence to support a criminal conviction for the limited purpose of determining whether there was adequate evidence admitted at trial for a reasonable person to have found each element of the crime proven beyond a reasonable doubt. State v. Johnson, 344 S.W.3d 884, 885 (Mo. App. E.D. 2011). We accept as true all evidence and inferences favorable to the verdict and disregard all evidence and inferences to the contrary. Id.

## Analysis

A person commits the offense of endangering the welfare of a child in the second degree if he or she "with criminal negligence acts in a manner that creates a substantial risk to the life, body or health of a child less than seventeen years of age . . . ." Section 568.050.1(1). Criminal negligence exists when the person "fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.5.

▇▇▇▇▇ "Read together, these two statutes require the state to prove defendant failed to be aware of a substantial or unjustifiable risk that his conduct would *endanger* the child." State v. Brock, 113 S.W.3d 227, 232 (Mo. App. E.D. 2003) (emphasis in original). A substantial risk is an actual or "practically certain" risk. State v. Smith, 241 S.W.3d 442, 445 (Mo. App. W.D. 2007). Whether a substantial risk exists is determined on a case-by-case basis looking at the totality of the circumstances. Id. "[E]vidence that a defendant's conduct caused a substantial risk to a child's emotional health would be sufficient to support a conviction for [child endangerment]." State v. Loughridge, 395 S.W.3d 605, 610 (Mo. App. S.D. 2013) (Reasoning that the plain and ordinary meaning of "health," concerning the "substantial risk to the life, body, or health" as used in the child endangerment statutes, is "broad enough to encompass a person's mental, emotional or psychological condition.").

▇▇▇ The evidence and inferences favorable to the verdict demonstrate that Defendant, through his conduct, created a situation where it was practically certain that each of the four children would suffer emotional and psychological injury. Defendant and Victim argued throughout the early morning hours with the children in their nearby rooms. After the two struggled for control of the gun and after Victim was shot, the Victim scooted toward the garage, bleeding profusely. Daughter called 911 and attempted to help her Mother into the truck to go to the hospital, which Defendant precluded by his desertion, forcing this child to manage the crisis by herself; to include trying to shield her siblings from their dying Mother while awaiting the arrival of the police.

Ultimately, a child psychologist who interviewed all four children diagnosed each with post-traumatic stress disorder and other psychological conditions, all stemming in great part from this incident. Based on the totality of the circumstances, there exists not only evidence of the "possibility of injury," but of actual psychological and emotional injury to each child created by Defendant's actions. Loughridge, 395 S.W.3d at 610.

Father contests, in part, he did not leave the children without proper supervision in a manner that rises to the level of criminal negligence, citing to Johnson, 344 S.W.3d 884, for support. In Johnson, the court deemed the defendant's act of leaving her children in the park while she went to the emergency room as merely "unwise." Id.

at 886. There, the only apparent injury to the children was that they were left in the cold, and so a charge of felony child endangerment was not supported by the evidence. Id. The children in Johnson were *not* exposed to their mother's homicide, perpetrated by the defendant, nor were they abandoned by the defendant to manage the results of his shooting their Mother. Daughter here was not merely "baby-sitting" the children, she was put in the unimaginable position of having to actively attempt to save her dying Mother's life after Defendant abandoned her. Moreover, Daughter's injury was exacerbated because she also tried to minimize the emotional injury to her siblings, who each witnessed most of this event.

We therefore conclude adequate evidence was admitted at trial for a reasonable juror to have found each element of endangering the welfare of a child in the second degree, proven beyond a reasonable doubt. See Id. at 885.

Point III is denied.

## Point IV—Denial of Continuance to Depose Doctor Not an Abuse of Discretion

In his fourth point on appeal, Defendant contends the trial court abused its discretion in denying his motion for a continuance so he might depose and present a witness at trial. Specifically, Defendant argues Daughter's child psychologist could have testified that Daughter believed Victim accidentally shot herself, which "would have been material to Defendant's case," and Defendant needed time to contact the doctor, who was out of the country at the time of trial and who was not disclosed until a month before trial. Defendant asserts a reasonable probability exists that had the doctor testified Defendant would not have been found guilty for Victim's death, and therefore the court violated his right to due process, to a fair trial, and to present a defense, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. Defendant therefore concludes his each of his seven convictions must be reversed for a new trial.

### Pertinent Facts for this Point on Appeal

Less than a month before trial, the State received and turned over to Defendant a number of counseling and Children's Division records. Defendant requested a continuance in order to depose witnesses associated with the disclosure. The court denied the continuance.

On the day of trial in late November, Defendant told the court that it was unable to depose one of those witnesses, a child psychologist named Dr. Arain, who was out of the country until after Christmas. Dr. Arain would presumably testify that when he interviewed Daughter, she told him she thought her mother "accidentally shot herself." Defendant renewed his request for a continuance, which the court again denied. Since multiple other witnesses would testify to Daughter's belief—including daughter herself, the 911 dispatcher, first-responding detective, and Counselor Taylor—the court stated Dr. Arain's testimony would be cumulative and "not absolutely necessary to Defendant's case."

### Standard of Review

The decision whether to grant a motion for continuance is committed to the sound discretion of the trial court. State v. Litherland, 477 S.W.3d 156, 163 (Mo. App. E.D. 2015). When properly preserved, a trial court's decision denying a motion for a continuance will be reversed only if there is a strong showing that the trial court abused its discretion and that prejudice resulted from the denial of the motion. Id. (citing State v. Salter, 250

S.W.3d 705, 712 (Mo. banc 2008)). An abuse of discretion occurs when a trial court's decision is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Id. "[T]he party requesting the continuance bear[s] the burden of showing prejudice." State v. Jones, 479 S.W.3d 100, 111 (Mo. banc 2016) (quoting State v. Schaal, 806 S.W.2d 659, 666 (Mo. banc 1991)).

### *Analysis*

■ Defendant claims because of the State's late disclosure of Dr. Arain's interaction with Daughter, coupled with court's refusal to grant the continuance, Defendant was not granted a fair trial. Defendant contends a reasonable probability exists the Doctor's testimony would have convinced the jury Defendant was not to blame for Victim's killing. Defendant reasons Daughter's statements "were made while in the psychiatric hospital and to someone who knows how to question and talk to children, being a psychiatrist, and his reports and his intake on it, his beliefs and what she was going through, and his diagnosis." Assuming *arguendo* that this issue was properly presented to the court,[8] we find Defendant's argument without merit.

Missouri appeals courts have often rejected an abuse-of-discretion appeal when an unavailable-witness's testimony would have been cumulative. See State v. Drewel, 835 S.W.2d 494, 496 (Mo. App. E.D. 1992) (finding the defendant's alibi witness's testimony would have been cumulative and would not have necessarily been inconsis-

tent with the state's evidence); State v. Greathouse, 694 S.W.2d 903, 908 (Mo. App. S.D. 1985) (witness's testimony "would only have corroborated the evidence of other witnesses" to show that defendant was out of the county when the burglary was committed). Conversely, the denial of a continuance has been found to be prejudicial to the defendant where the absent-witness was key to the defense's strategy, the testimony was not cumulative, and the witness was unavailable due to a medical emergency. Litherland, 477 S.W.3d at 163.

Here, the jury was not left to speculate about Daughter's perspective on the shooting. Defendant admits the jury heard Daughter's belief—that the shooting was accidental—multiple times. The responding officer testified to this, the recording of Daughter's 911 call corroborated it, and Daughter herself stated as much at trial. This evidence was considered by the court at the time of the continuance hearing. In denying Defendant's request, the court reasoned:

> I do think, although his testimony might be interesting, it does not appear to be, from everything I have heard, including the DVDs I looked at after the hearing on the 18th, that his testimony is just cumulative even though he was a treating physician. I think there's multiple witnesses [sic] that are going to testify that the children—one or more of the children stated that mom accidentally shot herself. This is cumulative testimony, and I don't think it is absolutely necessary to defendant's case.

Nothing in the court's analysis is "clearly against the logic of the circumstances then before it," nor is "so arbitrary and unrea-

---

8. The parties dispute whether the motion for continuance was properly raised to the trial court, pursuant to Missouri Supreme Court Rules 24.09 ("Application for Continuance, How Made") and 24.10 ("Application for a Continuance on Account of Absence of Witnesses"). We do not resolve this issue here, as even in assuming the issue was properly before the court, Defendant's substantive claim still fails.

sonable as to shock the sense of justice and indicate a lack of careful consideration." Litherland, 477 S.W.3d at 163.

Point IV is denied.

## Point V—Exclusion of Evidence Concerning Past Domestic Violence Was Proper

In his fifth point on appeal, Defendant contends the trial court erred in overruling his offer of proof of a witness's testimony. Specifically, Defendant argues the witness's testimony would have demonstrated the children experienced domestic violence from their biological father, before Defendant came into their lives, and was relevant to show that the children's psychological damage was not a sole result of Defendant's actions. Defendant maintains that, without showing an alternate source for the children's psychological problems, the jury was left with the impression that Defendant had committed domestic violence and was therefore responsible for Victim's death. Thus, Defendant asserts the court violated his right to present a defense and to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and 18(a) of the Missouri Constitution.

### Pertinent Facts for this Point on Appeal

When Son was 18–months old and under the care of his biological father ("Tony Lewis"), a friend of Tony Lewis's shot Son in the foot. Prior to trial, the court entered a motion in limine excluding any evidence of prior domestic abuse perpetrated by Tony Lewis, including the shooting incident. In doing so, the court concluded "it is extremely doubtful that a child would even remember that, regardless of how traumatic it was."

At trial, Timothy Taylor, a counselor who met with all four children after their Mother's death, testified about his conversations with them. He believed the children all suffered from post-traumatic stress disorder, but also believed many of their issues existed long before their Mother's death. However, in Defendant's offer of proof, the Counselor stated none of the children mentioned Tony Lewis in any meaningful way during his conversations with them. Counselor Taylor was aware of the shooting incident, but could not recall any of the children stating they were fearful of Tony Lewis, whom they had not seen in many years.

### Standard of Review

We review a defendant's challenge to the admissibility of evidence for a clear abuse of discretion. State v. Sanders, 481 S.W.3d 907, 913 (Mo. App. E.D. 2016). The trial court abuses its considerable discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable that it indicates a lack of careful consideration. Id. We will reverse only if the defendant shows both error and prejudice, where prejudice means a reasonable probability that the error affected the trial's outcome. Id.

### Analysis

To be admissible, evidence must be both logically and legally relevant. State v. Rodriguez, 482 S.W.3d 444, 448 (Mo. App. E.D. 2016). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable, and evidence is legally relevant if its probative value outweighs any costs related to its admission, such as unfair prejudice, confusion, misleading the jury, or cumulativeness." Id.

Generally, a defendant may introduce evidence tending to show that another person committed the charged offense, unless the probative value of the

evidence is substantially outweighed by its costs, such as undue delay, prejudice or confusion. State v. Benedict, 495 S.W.3d 185, 191 (Mo. App. E.D. 2016). Evidence is not admissible just to cast bare suspicion on another person. Id. Rather, evidence of an alternative perpetrator is admissible only if there is also proof that the other person committed some act directly connecting him with the crime. Id. The defendant must establish a clear link between the alleged alternative perpetrator and a key piece of evidence in the crime. Id.

▇▇▇ Defendant intended to offer Counselor Taylor's testimony that the children had previously experienced domestic violence between their parents, and therefore their current conditions were not due to Defendant's actions causing their Mother's death. This evidence, however, is not legally relevant.

In the offer of proof, Counselor Taylor stated that, aside from his general awareness of previous parental domestic violence when the children were younger, none mentioned Tony Lewis in a way connected to their current conditions. Moreover, his parental rights were terminated some seven years prior to Mother's death, and he had not subsequently been in their lives. In fact, the youngest of the four was not even born when he exited their lives. Without more proof connecting Tony Lewis to the children's conditions, the issue would only have served to cast bare suspicion and confuse the jury. Benedict, 495 S.W.3d at 191.

Further, in the offer of proof, the only time Counselor Taylor remembered any of the children specifically mentioning Tony Lewis was in his interview with Son. Son mentioned being shot in the foot when he was 18 months, but Counselor Taylor did not draw a connection between that incident and Son's current trauma. In excluding Tony Lewis's alleged past abuses, the court reasoned it was "extremely doubtful that a ·child would even remember that, regardless of how traumatic it was." We agree with the trial court: the probative value of this evidence is low, and substantially outweighed by its prejudice. Id.

Finally, Defendant was not barred from arguing an alternate source, and could use other pieces of evidence to do so. Counselor Taylor testified at trial he believed the children's issues "most probably were issues long before [Mother's] death," and so any relevance contained in the offer of proof would have been cumulative at best. Rodriguez, 482 S.W.3d at 448.

Point V is denied.

### Point VI—Insufficient Evidence Existed to Support Defendant's Necessity Defense

In his sixth point on appeal, Defendant contends the trial court erred in refusing to grant Defense Instruction A. Specifically, Defendant argues there was sufficient evidence to establish that it was necessary for Defendant to reach for the gun to prevent Victim from shooting herself. Defendant thus asserts the court violated his right to due process and to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution Defendant, and so his convictions for unlawful use of a weapon and for felony murder must be reversed and remanded for a new trial.

*Pertinent Facts for this Point on Appeal*

Prior to Mother's death, Defendant acquired a 1911 Colt .45 pistol "off the street." He kept it in the house, showed it to Son days before the killing, and on the night of Mother's death, had the gun hidden in the cushion of the couch. Defendant is a prior felony offender, and his ownership of the gun was not in dispute.

After the close of evidence, Defendant offered an instruction proposing the jury find him not guilty because he was acting in response to an emergency ("Instruction A"), which stated:

> As to Count VIII, if you find and believe from the evidence beyond a reasonable doubt that [D]efendant [unlawfully possessed of a firearm], you will then decide whether that conduct was lawful as an emergency measure.
>
> If you find and believe from the evidence that it is more probably true than not true: First, that through no fault of [D]efendant imminent danger of [Victim] shooting herself was about to occur, and Second, that the conduct of [D]efendant [ ] was necessary as an emergency measure to avoid such injury, and
>
> Third, that such injury, then imminent, was of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighed the harm caused or threatened by [D]efendant's [unlawful possession of a weapon],
>
> then you must find the [D]efendant not guilty [of felony murder] by reason of justifiable emergency measures.

The trial court denied Instruction A, ruling there was not enough evidence to support it.

### Standard of Review

■■■ We review *de novo* a trial court's decision whether to give a requested jury instruction. State v. Jackson, 433 S.W.3d 390, 395 (Mo. banc 2014)). On review, we need only look to whether substantial evidence was contained in the record to warrant the instruction. State v. Simmons, 861 S.W.2d 128, 131 (Mo. App. E.D. 1993). We view the evidence and reasonable inferences therefrom in the light most favorable to defendant and the theory propounded by defendant. State v.

Westfall, 75 S.W.3d 278, 280 (Mo. banc 2002).

### Analysis

■■■ Section 563.026.1 reads in pertinent part:

> [C]onduct which would otherwise constitute any offense ... is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged.

The corresponding jury instruction, MAI–CR 3d 308.20, is to be given "when the claimed facts and circumstances, if true, are legally sufficient to support the instruction." Simmons, 861 S.W.2d at 131. The claimed facts and circumstances upon which appellant relies to support the instruction must not be occasioned through his own fault. Id.

■■■ Defendant argues substantial evidence existed to show his proposed emergency justification for unlawful use of a weapon, and cites to numerous instances to support his claim. Just before the shooting, Defendant uttered "stop" to Victim after she grabbed the handgun. Further, Defendant maintained Victim said she would commit suicide if he went out with his friends. These facts, however, are irrelevant to Defendant's claim.

An emergency justification instruction may only be given where the situation "developed through no fault of the actor." Section 563.026.1, see also State v. Owen, 748 S.W.2d 893, 895 (Mo. App. W.D. 1988)

("The defense is predicated upon the defendant's freedom from fault in creating the emergency or necessity."). It is undisputed Defendant was the one who illegally possessed the firearm and brought it into the home, introducing that element into his conflict with the Victim.

Point VI is denied.

### Point VII—Clerical Error Exists in the Written Judgment

In his seventh point on appeal, Defendant contends the trial court erred in stating in its written judgment that Defendant had been convicted of four counts of the class C felony of child endangerment in the first degree involving sexual conduct, because this conflicts with the jury's verdicts, in that the jury found Defendant guilty of four counts of the class A misdemeanor of child endangerment in the second degree. Defendant thus argues his case should be remanded so the trial court can correct the written judgment to conform to its oral pronouncement at the sentencing hearing.

### Analysis

"The failure to accurately memorialize the trial court's judgment as announced in open court is a clerical error." State v. Hays, 396 S.W.3d 385, 387 (Mo. App. W.D. 2013). "Such mistakes can be corrected by a *nunc pro tunc* order, so long as the trial court's intentions regarding the defendant's sentence is clear from the record." Id. Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission. Id.

It is clear from the record before us the State charged Defendant with four counts of the class C felony of endangering the welfare of a child in the first degree, in violation of Section 568.045.1(1). We note that the Defendant was convicted of the lesser-included offense of endangering the welfare of a child in the second degree, in violation of Section 568.050, and the imposed sentence of one year for each count was appropriate for these misdemeanour convictions.[9] However, the written judgment states Defendant was charged under subsection (2) of 568.045, requiring proof of child endangerment by engaging in sexual conduct with a minor. No sexual contact was alleged at any point during trial. Thus, on remand, the trial court shall enter an order correcting this clerical error. See Hays, 396 S.W.3d at 387.

Point VII is granted.

### CONCLUSION

The judgment of the trial court is affirmed in part and reversed and remanded in part.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.

---

9. Of note, the jury ultimately convicted Defendant of four counts of the class A misdemeanor of endangering the welfare of a child in the second degree, in violation of Section 568.050, and the trial court's pronouncement at sentencing follows the jury's verdict. The written judgment also reflects that the four class-C felonies were "amended to" the proper class-A misdemeanor. Therefore, no substantive change will come of this alteration to the written judgment.