

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,              )
                                )
    Respondent,              )    No. SD36928
                                )
vs.                             )    **Filed: March 18, 2022**
                                )
JOSHUA L. OLDHAM,               )
                                )
    Appellant.               )

APPEAL FROM THE CIRCUIT COURT OF WAYNE COUNTY

Honorable Judge Kelly W. Parker

**<u>AFFIRMED</u>**

Joshua L. Oldham ("Oldham") appeals his convictions of murder in the first degree and armed criminal action following a jury trial.[1] Oldham raises two points on appeal. First, he claims the trial court erred by denying his motion to continue the trial date because it denied him his right to a representative cross section of the community in that certain venirepersons with COVID issues were later excluded from the jury. In point 2, Oldham argues there was insufficient evidence to support a conviction of murder in the first degree because there was no evidence he acted with deliberation. Because neither point has merit, we affirm the judgment.

---

[1] *See* §§ 565.020 and 571.015. All statutory citations are to RSMo. (2000). Before trial, Oldham pleaded guilty to unlawful possession of a firearm. *See* § 571.070.

## Background

On November 4, 2017, Oldham shot Luke Helm ("Victim") multiple times after getting into an argument with him at a barbeque at Victim's parents' ("the Helmses") home. Oldham frequently attended gatherings at the Helmses' home and rented a trailer from Victim. On the day of the shooting, Oldham arrived with his girlfriend and began discussing the back rent he owed to Victim. There was no argument, and at the end of the conversation Victim patted Oldham on the shoulder and told him they would "work it out[.]" Oldham and his girlfriend left to go cash a check.

Oldham and his girlfriend returned later to the Helmses' house. Oldham went inside the house to talk to Victim while his girlfriend waited in the car. Victim's mother testified Oldham seemed "agitated" and argued with Victim. Victim told Oldham he was "tired of it" and to "just get out" of the rental property. Oldham mumbled something to Victim as he walked out the door.

Victim followed Oldham outside where they began "wrestling around on the ground." The fighting eventually stopped. Victim began talking to his nephew, and Oldham got into his car. Oldham's girlfriend testified Oldham grabbed a gun from between the passenger seat and the middle console of the car.

Tobias McGee ("McGee"), a family friend, testified Oldham stood by his open car door and called Victim a "fat f*ck." Victim asked, "What did you call me?" and walked toward Oldham's car. Oldham sat down in the car and Victim came up to the car window. Oldham then shot Victim multiple times. After the first shot, Victim looked down and said, "You shot me" and began backing away. Victim's nephew testified that Victim turned to get away after the second shot and began falling. McGee testified that a few more seconds went by before he heard a third shot. After the last "pop[,]" McGee saw Victim "standing stiff as a board and fall face down in the ground."

2

Oldham fled and "tore out of the driveway[,]" leaving his girlfriend. The police later located Oldham but never found the gun. Oldham fired four shots in total.[2] Three bullets hit Victim in the arm, the jaw, and the side. The medical examiner found no indications of a close-range shooting.

At trial, Oldham did not dispute shooting Victim but argued he did so in self-defense. The jury found Oldham guilty of murder in the first degree and armed criminal action. This appeal followed. For ease of analysis, we address Oldham's points out of order.

### Point 2: Sufficiency of the Evidence

#### Standard of Review

Oldham claims the trial court erred in denying his motion for a judgment of acquittal because there was insufficient evidence from which a reasonable juror could find beyond a reasonable doubt that Oldham knowingly caused Victim's death after deliberation. In reviewing a claim for sufficiency of the evidence, our review is limited to "whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Naylor*, 510 S.W.3d 855, 859 (Mo. banc 2017) (quoting *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011)). This Court does not weigh the evidence, but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict in determining whether evidence was sufficient to support a conviction and to withstand a motion for judgment of acquittal. *Id.* at 858-59. Additionally, we do not act as a "super juror" with veto powers but defer to the trier of fact when reviewing the sufficiency of the evidence supporting a criminal conviction. *Id.* at 859.

#### Analysis

"A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person *after deliberation* upon the matter." § 565.020.1 (emphasis added).

---

[2] One bullet missed Victim and hit one of the vehicles parked nearby.

"Deliberation" means "cool reflection for any length of time no matter how brief[.]" § 565.002(5). "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." *State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004) (quoting *State v. Johnston*, 957 S.W.2d 734, 747 (Mo. banc 1997)). Even an instant is sufficient time for a defendant to deliberate "and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013). "[T]he element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *State v. Shaddox*, 598 S.W.3d 691, 696 (Mo. App. S.D. 2020) (quoting *Nathan*, 404 S.W.3d at 266). Deliberation may be proven from the circumstances surrounding the crime. *State v. Tisius*, 92 S.W.3d 751, 764 (Mo. banc 2002).

Here, the State's evidence was sufficient for the factfinder to find beyond a reasonable doubt that Oldham coolly reflected on his actions before he caused Victim's death. After Victim and Oldham's physical altercation in the yard ended, Oldham went to his car. He had an ample opportunity to deescalate the situation and could have driven off in his car. Instead, he grabbed his gun, provoked Victim by calling him a derogatory name, and shot Victim multiple times. After the first shot, Victim cried out and attempted to turn away. Oldham then fired three more shots, two of which struck Victim. According to the medical examiner, two of the shots had a downward trajectory, indicating Victim was positioned lower to the ground than Oldham, who was shooting while sitting in his car.

This evidence was sufficient for the factfinder to find that Oldham coolly reflected on his choices. *See State v. Moore*, 949 S.W.2d 629, 632 (Mo. App. W.D. 1997) (firing multiple shots at a victim indicated there was time for deliberation between shots); *State v. Foote*, 791 S.W.2d 879, 884 (Mo. App. E.D. 1990) (the decision to continue an attack after a victim is incapacitated supports an inference of deliberation). Oldham's post-shooting conduct also strengthens the inference of deliberation. Instead of rendering aid, Oldham fled and police were

4

never able to locate his gun.  *See* **State v. Sanders-Ford**, 527 S.W.3d 223, 226 (Mo. App. S.D. 2017) ("The inference of deliberation is [further] strengthened by a defendant's post-shooting flight without procuring aid for the victim."); **State v. Howery**, 427 S.W.3d 236, 246 (Mo. App. E.D. 2014) (disposal of evidence can support a finding of deliberation).

The trial court did not err in denying Oldham's motion for judgment of acquittal because there was sufficient evidence for a reasonable juror to find beyond a reasonable doubt that Oldham knowingly caused Victim's death after deliberation upon the matter.  Point 2 is denied.

### *Point 1: No Abuse of Discretion in Denying Motion for Continuance*

Approximately one week before the trial date, Oldham filed a motion for continuance premised upon the proposition that the effect of the COVID pandemic on certain groups would "likely impact the ability to empanel a fair and appropriate cross section of the community" to serve on the jury.  The trial court overruled Oldham's motion.  Oldham's point relied on challenging that ruling states:

> The Trial Court Erred in Denying Defendant's Motion to Continue Filed on July 26, 2020 in that Proceeding with a Jury Trial Denied Defendant his Right to a Representative Cross Section of the Community because the Sick, Elderly, and those Exposed to COVID were excluded from the Jury Pool in violation of the Supreme Court case U.S. v. Duren[.]

#### *Standard of Review*

> The decision whether to grant or deny a continuance "is within the sound discretion of the trial court."[3] *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc 2003).  "An abuse of discretion occurs when a trial court's decision is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  *State v. Harding*, 528 S.W.3d 362, 376 (Mo. App. [E.D.] 2017).

**State v. Taber**, 604 S.W.3d 895, 902 (Mo. App. S.D. 2020).  "Reversal is warranted only upon a very strong showing that the court abused its discretion and prejudice resulted."  **Edwards**, 116 S.W.3d at 535.

---

[3] Although not addressed in Oldham's point, his argument acknowledges that "[t]he decision on whether or not to grant a continuance is reviewed under an abuse of discretion standard."

*Analysis*

By the nature of the requested relief, the trial court had to decide *before trial* whether to grant or deny Oldham's motion to continue the trial. At that time, the only basis proffered by Oldham for a continuance was his speculation as to what might occur during the trial due to the COVID pandemic and related healthcare directives and restrictions.

The trial court recognized, acknowledged and responded to the speculative nature of Oldham's basis for a continuance by stating, "You know the what-if's we cross those, you know what if an earthquake takes down the Courthouse, you know, we cross those bridges when we get to them. I'm not going to proceed on what-if's. I will deal with the what-if's and let the chips fall where they may." In stating "we cross those bridges when we get to them[,]" the trial court was metaphorically referring to the fundamental due process nature of a trial whereby Oldham would have the opportunity to object at any time during the trial that a COVID pandemic-related healthcare directive or restriction would have or actually had a prejudicial effect upon his right to a fair trial. At the time of any trial objection, the trial court then would have the opportunity to rule upon the objection based upon an actual set of facts in existence at the time of the objection.[4]

"A trial court does not abuse its discretion in denying a motion for a continuance based on mere speculation." **State v. Smith**, 491 S.W.3d 286, 302 (Mo. App. E.D. 2016) (citing **State v. Johnson**, 812 S.W.2d 940, 944 (Mo. App. S.D. 1991)). This is especially applicable here where the trial court made a carefully considered and reasoned decision to trade speculation for actual factual situations in a trial where Oldham had at his disposal the full plethora of due process protections afforded a criminal defendant during a trial. Under these circumstances, we cannot say that the trial court's decision "is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice

---

[4] However, the record on appeal reveals that Oldham never made the specific objection raised in the motion for continuance at the time of trial or in his motion for a new trial.

6

and indicate a lack of careful consideration." ***Harding***, 528 S.W.3d at 376.  Oldham's point 1 is denied.

## Conclusion

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

GARY W. LYNCH, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS