

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff-Respondent,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. SD37348
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Filed:  December 12, 2023
JOSHUA J. BROWN,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendant-Appellant.⠀⠀⠀)

### APPEAL FROM THE CIRCUIT COURT OF BARTON COUNTY

### Honorable David R. Munton, Circuit Judge

**AFFIRMED**

Joshua Brown (Defendant) appeals from his conviction for one count of second-degree felony murder.  *See* § 565.021.[1]  Defendant raises four points on appeal.  The first three contend the trial court should have dismissed the charge against him based on double jeopardy, and the fourth point contends the evidence was insufficient to support his conviction.  Because his contentions are without merit, we affirm the judgment of the trial court.

### Factual and Procedural Background

On the night of November 2, 2014, Deputy Matthew Chism (Deputy Chism) of the Cedar County Sheriff's Office attempted to stop a car he observed with a headlight out.  Deputy

---

[1]  All statutory references are to RSMo Cum. Supp. (2013).

Chism engaged in a pursuit with the vehicle when it failed to pull over. During the pursuit, an object was thrown from the vehicle, which was later found to be "an eyeglass case" containing methamphetamine. Eventually, the vehicle slowed down enough for a passenger, carrying a backpack, to exit the vehicle and flee on foot.

As the vehicle drove away, Deputy Chism stopped his own vehicle and exited to chase the passenger, who was later identified as William Collins (Collins). A local resident observed Collins running from Deputy Chism and saw the two men briefly fight in his front yard before continuing to run. From inside his house, the resident heard a series of gunshots. A 911 dispatcher, who was waiting nearby in Deputy Chism's vehicle, also heard the gunshots. There were no witnesses who actually saw the shooting.

The resident went outside and discovered Collins and Deputy Chism both lying on the ground with gunshot wounds. Officers who arrived at the scene of the shooting found two handguns and Collins' backpack, which contained several "burglar tools." Deputy Chism and Collins both received medical care. Collins died at the scene, and Deputy Chism was pronounced dead after being transported to a hospital.[2]

Police checked the license plate of the car that had fled from Deputy Chism and identified Defendant as a person who may have been driving the car. Defendant was located and gave three interviews to police the morning after the shooting. During the first interview, he denied that he was driving the vehicle during the pursuit. According to Defendant, the car, which belonged to his mother, had been stolen earlier in the evening. He stated that he walked around town looking for the car, found it, and drove it back to his mother's house. Defendant claimed that he had not been with Collins at all that night.

---

[2] Shell casings were recovered at the scene, and bullets were removed later from each body. At trial, the parties stipulated that Collins had been shot by Deputy Chism, and the deputy had been shot by Collins.

During the second interview, Defendant admitted that he had picked up Collins in his mother's car and that the two had smoked meth together. Collins showed Defendant a gun, and Defendant knew Collins was not supposed to have the gun.[3] Defendant "freaked out" because Collins had a gun with him. Defendant was driving when he saw police lights behind him. Defendant said he wanted to pull over, but Collins told him not to do it. According to Defendant, Collins told him "he had a warrant [and] a gun." Eventually, Collins told Defendant to slow down so Collins could jump out of the vehicle. Defendant did as Collins asked and then drove the car home.

At the first trial, Defendant was charged with second-degree felony murder, attempted distribution of a controlled substance, hindering prosecution of a felony, and tampering with physical evidence in a felony prosecution. The State presented the felony-murder charge as the killing of Deputy Chism predicated on the offense of hindering prosecution. Specifically, the jury was instructed that the underlying felony was "Hindering Prosecution of William Collins for Possession of a Firearm by a Convicted Felon[.]" The jury returned a verdict of guilty on all four counts.[4]

At the sentencing hearing, defense counsel argued that the evidence did not support Defendant's convictions for hindering prosecution and felony murder. The trial court agreed and entered a judgment of acquittal notwithstanding the verdict on both charges. The State appealed the trial court's judgment, arguing that it made a submissible case on the charges of hindering prosecution and felony murder. *State v. Brown*, 543 S.W.3d 647 (Mo. App. 2018)

---

[3] At trial, the parties stipulated that Defendant and Collins each had felony convictions prior to November 2, 2014.

[4] Count 2 was amended from attempted distribution of a controlled substance to possession of a controlled substance.

("***Brown I***").  This Court affirmed the trial court's judgment, but our analysis was limited to the hindering-prosecution issue.  ***Id***. at 648.

Following the State's unsuccessful appeal, it brought an additional charge of felony murder against Defendant.  The second-amended information alleged that Defendant committed the class A felony of second-degree murder, in that "Collins was shot and killed as a result of the perpetration or immediate flight from perpetration of the class C felony of unlawful possession of a firearm," in violation of § 571.070, "committed by [D]efendant acting alone and in concert with William Collins[.]"

Defendant submitted several motions to dismiss on grounds that included collateral estoppel, double-jeopardy claim preclusion, and double-jeopardy protections established by § 556.041.  These motions were denied, and the case proceeded to trial.  The jury found Defendant guilty of second-degree murder, and the trial court sentenced him to a term of fifteen years' imprisonment.  This appeal followed.

### Standard of Review

Defendant's first three points raise double-jeopardy claims, which are subject to *de novo* review.  ***State v. Andrews***, 643 S.W.3d 497, 499 (Mo. banc 2022).

Defendant's fourth point challenges the sufficiency of the evidence to support his conviction.  Our review of this claim is "limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt."  ***State v. Lammers***, 479 S.W.3d 624, 632 (Mo. banc 2016).  An appellate court must consider all evidence in the light most favorable to the verdict and grant the State all reasonable inferences.  ***Id***.  Any contrary evidence and inferences are disregarded.  ***Id***.

4

*Point 1*

Defendant argues that collateral estoppel should have precluded the State from prosecuting him for felony murder. According to Defendant, the trial court's determination on the issue of proximate cause in the first trial should have resolved the issue of proximate cause in Defendant's favor in the second trial.

The trial court in the first trial entered a judgment of acquittal on the charges of hindering prosecution and felony murder. Regarding the felony-murder charge, the trial court reasoned that "when [Collins] gets out of the car, I think that is an intervening break. And that's why it was no longer felony murder."

The State appealed the judgment of acquittal and raised two points: (1) that there was sufficient evidence to support the charge of hindering prosecution; and (2) that there was sufficient evidence to support the charge of felony murder. In ***Brown I***, we affirmed the trial court's judgment but only reached the State's first point on appeal, concluding that the State failed to make a submissible case on the charge of hindering prosecution. ***Brown I***, 543 S.W.3d at 648. Because we affirmed Defendant's acquittal on the underlying felony, we did not address the State's argument regarding Defendant's acquittal for felony murder. We explained: "[Point II] asserts that Defendant committed felony murder 'in that Deputy Chism's death was the result of Defendant's hindering prosecution.' Point I's failure thus defeats this point as well. We deny Point II and affirm the judgment." ***Id***. at 651.

Defendant cannot assert collateral estoppel based on the trial court's findings in the first trial regarding proximate cause for felony murder because that was not the basis for our decision on appeal.

> When an appellate Court affirms a judgment of a trial court on grounds different
> from those of the trial court, the trial court's decree and judgment is in effect

modified and the judgment is res judicata only as to those matters included within the judgment as modified. The trial court's decision is not res judicata as to the grounds not relied on by the appellate court.

*Cheatham v. Walsh*, 669 S.W.2d 587, 589 (Mo. App. 1984) (internal citations omitted).

Because in *Brown I* we only affirmed the trial court's ruling that there was insufficient evidence to support the charge of hindering prosecution, collateral estoppel applies only to that part of the judgment from the first trial. All other findings by the trial court in the first trial, including that the State did not sufficiently prove proximate cause to support the charge of felony murder, are without preclusive effect. Therefore, collateral estoppel did not preclude the State from prosecuting Defendant for felony murder in the present case.

Defendant relies heavily on *Ashe v. Swenson*, 397 U.S. 436 (1970), but that reliance is misplaced. In *Ashe*, six men were engaged in a poker game in the basement of a home when:

> [s]uddenly three or four masked men, armed with a shotgun and pistols, broke into the basement and robbed each of the poker players of money and various articles of personal property. The robbers – and it has never been clear whether there were three or four of them – then fled in a car belonging to one of the victims of the robbery. Shortly thereafter the stolen car was discovered in a field, and later that morning three men were arrested by a state trooper while they were walking on a highway not far from where the abandoned car had been found. [Ashe] was arrested by another officer some distance away.

*Id*. at 437. Ashe was charged with robbing Donald Knight, who was one of the participants in the poker game. At trial:

> the State called Knight and three of his fellow poker players as prosecution witnesses. Each of them described the circumstances of the holdup and itemized his own individual losses. The proof that an armed robbery had occurred and that personal property had been taken from Knight as well as from each of the others was unassailable. The testimony of the four victims in this regard was consistent both internally and with that of the others. But the State's evidence that [Ashe] had been one of the robbers was weak. Two of the witnesses thought that there had been only three robbers altogether, and could not identify [Ashe] as one of them. Another of the victims, who was [Ashe's] uncle by marriage, said that at the "patrol station" he had positively identified each of the other three men accused of the holdup, but could say only that [Ashe's] voice "sounded very much like" that of one of the robbers. The fourth participant in the poker game did identify [Ashe], but only by his "size and height, and his actions."

6

*Id*. at 438.  The jury found Ashe not guilty due to insufficient evidence.  *Id*. at 439.

Six weeks later, Ashe was tried again for robbing a different participant in the poker game, Roberts.  After the second trial, Ashe was convicted.  His direct appeal asserting double jeopardy was denied, and his later collateral attack on the judgment was unsuccessful.  Ashe then brought a habeas corpus petition, which ultimately made its way to the United States Supreme Court.  The Court held that Ashe was entitled to relief because the second prosecution violated the Fifth Amendment's protection against double jeopardy.  *Id*. at 443-45.  The Court reasoned that:  (1) collateral estoppel is an ingredient in the Fifth Amendment's double-jeopardy analysis; and (2) this simply means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  *Id*. at 443.  Applying these principles, the Court reached the following conclusion:

> Straightforward application of the federal rule to the present case can lead to but one conclusion.  For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery.  The single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers.  And the jury by its verdict found that he had not.  The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.

*Id*. at 445.

We have reviewed *Ashe* in depth to show why it is factually distinguishable.  There, the only basis in the record for Ashe's first acquittal was an implicit finding that he was not one of the robbers.  It was that finding which collaterally estopped the State from further prosecution.  In *Brown I*, we affirmed the trial court's entry of judgment notwithstanding the verdict because the State failed to prove the predicate felony of hindering prosecution.  We did not decide the

7

proximate-cause issue because it was unnecessary to do so. Therefore, *Ashe* does not control our decision on the issue. Point 1 is denied.

*Point 2*

Defendant claims that he was denied his rights under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. He argues that the trial court should have dismissed the felony-murder charge against him because the underlying felony was an "included offense" of an offense of which he was acquitted in his first trial.

The Fifth Amendment "protects defendants from successive prosecutions for the same offense after acquittal or conviction[.]" *State v. Hardin*, 429 S.W.3d 417, 421 (Mo. banc 2014). To determine whether a successive prosecution is prohibited by the Double Jeopardy Clause, we apply the "same-element" test from *Blockburger v. United States*, 284 U.S. 299 (1932). *See State v. Burns*, 877 S.W.2d 111, 112 (Mo. banc 1994). "[T]he *Blockburger* test asks whether each offense contains an element not contained in the other; if not, the Double Jeopardy Clause bars a successive prosecution." *Burns*, 877 S.W.2d at 112. We identify the elements of an offense from the statute that defines the offense. *Hardin*, 429 S.W.3d at 424.

Defendant argues that unlawful possession of a firearm, the underlying offense for his felony-murder charge, has the same elements for the purposes of the *Blockburger* test as hindering prosecution, an offense of which he was acquitted in his first trial. Hindering prosecution is defined by § 575.030, which states:

> 1. A person commits the crime of hindering prosecution if for the purpose of preventing the apprehension, prosecution, conviction or punishment of another for conduct constituting a crime he:
>
> (1) Harbors or conceals such person; or
>
> (2) Warns such person of impending discovery or apprehension, except this does not apply to a warning given in connection with an effort to bring another into compliance with the law; or

8

(3) Provides such person with money, transportation, weapon, disguise or other means to aid him in avoiding discovery or apprehension; or

(4) Prevents or obstructs, by means of force, deception or intimidation, anyone from performing an act that might aid in the discovery or apprehension of such person.

*Id*. Unlawful possession of a firearm is defined by § 571.070 as follows:

1. A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and:

(1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony; or

(2) Such person is a fugitive from justice, is habitually in an intoxicated or drugged condition, or is currently adjudged mentally incompetent.

*Id*.

When compared under the ***Blockburger*** "same-element" test, it is clear that these two statutes each contain elements not contained in the other. Unlawful possession of a firearm requires the defendant to be either a convicted felon, a fugitive from justice, intoxicated or drugged, or adjudged mentally incompetent, while none of these conditions is an element of hindering prosecution. Alternatively, hindering prosecution requires a defendant to have the purpose of "preventing the apprehension, prosecution, conviction, or punishment of another" person, which is not necessary for the commission of unlawful possession of a firearm. Because these statutes each contain an element not present in the other, Defendant's second prosecution was not barred by the Fifth Amendment's Double Jeopardy Clause.[5] Point 2 is denied.

---

[5] Defendant's ***Blockburger*** argument focuses on the jury instructions for each offense. His reasoning is flawed because our analysis of an "included offense" focuses on the statute defining the offense, not the jury instructions. ***Hardin***, 429 S.W.3d at 424.

9

Defendant's third point is based on the language of § 556.041. In pertinent part, this statute states:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
>
> (1) One offense is included in the other, as defined in section 556.046; or
>
> (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
>
> (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct[.]

§ 556.041. Defendant argues that his acquittal for the charge of hindering prosecution in his first trial should have precluded prosecution in his second trial for felony murder predicated on unlawful possession of a firearm. However, the plain language of § 556.041 shows its inapplicability to the case at bar. This statute establishes circumstances under which a defendant may not "be convicted of more than one offense[.]" Since Defendant was acquitted of hindering prosecution in the first trial, he was not convicted of more than one offense within the meaning of the statute in the second trial.[6] Accordingly, Point 3 is denied.

*Point 4*

Defendant's fourth point contends the evidence was insufficient to sustain his conviction for felony murder. As noted above, our review of this contention is limited to

---

[6] Defendant contends that § 556.041 should apply because he was convicted of two other charges during the first trial: possession of a controlled substance and tampering with physical evidence. However, his argument then proceeds to apply § 556.041 to the offenses of hindering prosecution and unlawful possession of a firearm. Defendant fails to show a relationship between felony murder and either possession of a controlled substance or tampering with physical evidence – the offenses for which he was actually convicted – that would fall within the scope of any of the provisions of § 556.041.

10

whether the State introduced adequate evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt. *See State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016). We must consider all evidence in the light most favorable to the verdict and grant the State all reasonable inferences. *Id*.

A person commits second-degree murder if he "[c]ommits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony[,] another person is killed as a result of the perpetration or attempted perpetration of such felony[.]" § 565.021.1(2). "A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and: (1) [s]uch person has been convicted of a felony under the laws of this state …." § 571.070.1(1). Because the word "knowingly" only appears in the first element of this statute, there is no requirement that the State prove a mental state as to the second element. *State v. Purifoy*, 495 S.W.3d 822, 825 (Mo. App. 2016) (holding that the State was not required to prove that the defendant knew he had a prior felony conviction, only that he knowingly possessed a firearm); *see also State v. Fikes*, 597 S.W.3d 330, 334 (Mo. App. 2019) (agreeing with *Purifoy* and holding that the State was not required to prove the defendant knew he had a prior felony conviction).

The second-amended information alleged, *inter alia*, that Defendant acted in concert with Collins in committing the crime of unlawful possession of a firearm.

> 1. A person is criminally responsible for the conduct of another when: … (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

§ 562.041.1(2). "The underlying premise for this statutory form of criminal liability is that all persons who act in concert to commit a crime are equally guilty." *State v. Mueller*, 568 S.W.3d 62, 71 (Mo. App. 2019). "Missouri eliminated the distinction between principals and

accessories in 1979, and it is now the law that all persons who act in concert are equally guilty." *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). Evidence to support a conviction may be "[a]ny evidence, either direct or circumstantial, that shows 'affirmative participation' in aiding" another to commit the crime. *Mueller*, 568 S.W.3d at 71. "[T]he requirement of affirmative participation may be satisfied by inference." *Id*.

Defendant argues that there was insufficient evidence to support the element of proximate cause required for felony murder. According to Defendant, there were two intervening acts that broke the chain of causation between his actions and Collins' death: (1) Collins exiting the car; and (2) Deputy Chism following Collins on foot instead of continuing to pursue Defendant's car.

We apply a "foreseeability" proximate-cause analysis in felony murder cases, which permits a defendant to be held "responsible for any deaths that are the natural and proximate result of the crime unless there is an independent intervening cause." *State v. Burrage*, 465 S.W.3d 77, 80 (Mo. App. 2015). Felony murder requires the underlying felony and the killing to be parts of a single continuous transaction and to be closely connected in time, place, and causal relationship. *State v. Priest*, 585 S.W.3d 397, 399 (Mo. App. 2019). We must "determine if the underlying felony 'set into motion the chain of events' that caused the death." *Id*. (quoting *Burrage*, 465 S.W.3d at 80).

There was sufficient evidence from which a reasonable juror could have concluded beyond a reasonable doubt that Defendant's act of aiding Collins in the unlawful possession of a firearm proximately caused Collins' death. First, there was sufficient evidence to prove that Collins knowingly possessed a firearm and that he had a prior felony conviction. Second, Defendant knew Collins had a gun during the pursuit. Defendant continued to flee at Collins' instruction because "he had a warrant [and] a gun." When Collins told Defendant to slow down

12

so Collins could jump out of the vehicle, Defendant did so. Collins' flight from the vehicle quickly led to Deputy Chism chasing Collins on foot and the two men shooting each other. The shooting occurred close in time and place to Defendant letting Collins out of the car. Ultimately, Defendant helped an armed individual flee from an armed police officer, and a reasonable jury could decide that a shootout was foreseeable as a natural and proximate result of this act.

Defendant's claim that there were two independent intervening acts is without merit. Defendant cannot assert that Collins exiting the car was an independent act because Collins' departure was only made possible by Defendant's choice to slow the car. This act was not only foreseeable; it was directly caused by Defendant's actions. An intervening act is not independent when it is a result of a defendant's own actions. *See* ***State v. Moore***, 580 S.W.2d 747, 752-53 (Mo. banc 1979) ("the act of Williams was not an independent act because it was the attempted robbery by the appellant and his accomplices which provoked Williams to pull the pistol he was carrying from his waistband and it was the shot fired from one of the felons which brought Williams' return fire"). As to Defendant's second claimed intervening act, Deputy Chism's decision to follow Collins on foot may not have been expected by Defendant, but it was foreseeable under the circumstances. After pursuing Defendant's car for some time, Deputy Chism would have seen the car slow down and a man with a backpack exit and run away. It would have been entirely reasonable for Deputy Chism to determine that the man fleeing on foot was doing so because he was carrying something he was attempting to hide from the pursuing police officer. Deputy Chism's choice to pursue Collins was a direct consequence of Defendant's choice to let Collins out of the car, so it was not an independent intervening act. Point 4 is denied.

The judgment of the trial court is affirmed.

JEFFREY W. BATES, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCUR

JENNIFER R. GROWCOCK, J. – CONCUR